Civil Action No. 24-cv-00358 (MN)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 Case |
| BYJU'S ALPHA, INC.,[1] | Bankruptcy Case No. 24-10140 (JTD) |
| Debtor. | |
| CAMSHAFT CAPITAL FUND, LP, CAMSHAFT CAPITAL ADVISORS, LLC, CAMSHAFT CAPITAL MANAGEMENT, LLC, | |
| Defendants-Appellants, | Adv. Pro. Case No. 24-50013 (JTD) |
| v. | Bankruptcy BAP No. 24-25 |
| BYJU'S ALPHA, INC., | |
| Plaintiff-Appellee, | |
| GLAS TRUST COMPANY LLC | |
| Intervenor-Appellee. | |

## APPELLEES' OPPOSITION TO APPELLANTS' MOTION FOR A STAY PENDING APPEAL OF CONTEMPT ORDER AND PRELIMINARY INJUNCTION

---

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 case is: 1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Susheel Kirpalani (admitted *pro hac vice*)
Benjamin Finestone (admitted *pro hac vice*)
William B. Adams (admitted *pro hac vice*)
Daniel Holzman (admitted *pro hac vice*)
Jianjian Ye (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel.: (212) 849 7000
susheelkirpalani@quinnemanuel.com
benjaminfinestone@quinnemanuel.com
williamadams@quinnemanuel.com
danielholzman@quinnemanuel.com
jianjianye@quinnemanuel.com

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (Del. No. 2847)
Kenneth J. Enos (Del. No. 4544)
Jared W. Kochenash (Del. No. 6557)
Timothy R. Powell (Del. No. 6894)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
kenos@ycst.com
jkochenash@ycst.com
tpowell@ycst.com

*Counsel for Debtor-Plaintiff-Appellee BYJU's Alpha, Inc.*

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
Po Box. 8705
Wilmington, Delaware 19801
Telephone:     (302) 652-4100
Email:          ljones@pszjlaw.com
               pkeane@pszjlaw.com

**KIRKLAND & ELLIS LLP**
George W. Hicks, Jr., P.C. (*pro hac vice* forthcoming)
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
george.hicks@kirkland.com

Seth M. Cohen (*pro hac vice* forthcoming)
555 California Street
San Francisco, CA 94144
(415) 439-1500
seth.cohen@kirkland.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
patrick.nash@kirkland.com

i

Brian Schartz, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
brian.schartz@kirkland.com

*Counsel for Intervenor-Appellee GLAS Trust Company LLC*

## CORPORATE DISCLOSURE STATEMENT

As required by Federal Rule of Bankruptcy Procedure 8012(a), Appellee BYJU's Alpha, Inc. states that there is no parent corporation and publicly held corporation that owns 10% or more of its stock.


Dated:      April 22, 2024      Respectfully submitted,


**YOUNG CONAWAY STARGATT
& TAYLOR, LLP**

*/s/ Kenneth J. Enos*
Robert S. Brady (Del. No. 2847)
Kenneth J. Enos (Del. No. 4544)
Jared W. Kochenash (Del. No. 6557)
Timothy R. Powell (Del. No. 6894)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
kenos@ycst.com
jkochenash@ycst.com
tpowell@ycst.com

**QUINN EMANUEL URQUHART
 & SULLIVAN, LLP**

Susheel Kirpalani (admitted *pro hac vice*)
Benjamin Finestone (admitted *pro hac vice*)
William B. Adams (admitted *pro hac vice*)
Daniel Holzman (admitted *pro hac vice*)
Jianjian Ye (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010

Tel.: (212) 849 7000
susheelkirpalani@quinnemanuel.com
benjaminfinestone@quinnemanuel.com
williamadams@quinnemanuel.com
danielholzman@quinnemanuel.com
jianjianye@quinnemanuel.com

*Counsel   for   Debtor-Plaintiff-Appellee
BYJU's Alpha, Inc.*

## CORPORATE DISCLOSURE STATEMENT

As required by Federal Rule of Bankruptcy Procedure 8012(a), Appellee

GLAS Trust Company LLC states that it is a wholly-owned subsidiary of GLAS

USA LLC, a business entity organized under the laws of the state of New Jersey.

GLAS Trust Company LLC is not a subsidiary of any publicly held corporation.


Dated:      April 22, 2024               Respectfully submitted,


*/s/ Laura David Jones*

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
Po Box. 8705
Wilmington, Delaware 19801
(302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

**KIRKLAND & ELLIS LLP**

George W. Hicks, Jr., P.C. (*pro hac vice* forthcoming)
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
george.hicks@kirkland.com

Seth M. Cohen (*pro hac vice* forthcoming)
555 California Street
San Francisco, CA 94144
(415) 439-1500
seth.cohen@kirkland.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
patrick.nash@kirkland.com

Brian Schartz, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022

iii

(212) 446-4800
brian.schartz@kirkland.com

*Counsel for Intervenor-Appellee GLAS Trust Company LLC*

## **TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ...................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................3

    A.   Movants' Effectuation Of Three Fraudulent Transfers.........................3

    B.   Movants' Willful Violation Of A Discovery Order Aimed At Revealing The Location Of The Alpha Funds. ....................................5

    C.   The Show-Cause Order, With Notice Of Sanctions Including Civil Confinement. ...................................................................6

    D.   The Contempt Order Following Morton's Failure To Appear At The Show-Cause Hearing And Continued Defiance Of The Discovery Order. ...................................................................7

    E.   The PI Order Following An Evidentiary Hearing Where Camshaft Presented No Evidence. .......................................9

    F.   The Order Denying Movants' Stay Motion. ......................................10

III.  LEGAL STANDARD ........................................................................11

IV.  ARGUMENT......................................................................................12

    A.   Movants Are Unlikely To Succeed On Appeal. ..................................12

        1.   Movants' Appeal Of The Contempt Order Is Unlikely To Succeed. ...................................................................12

        2.   Camshaft's Appeal Of The PI Order Is Unlikely To Succeed. ...................................................................17

    B.   No Irreparable Harm Absent A Stay.................................................19

    C.   A Stay Would Harm The Debtor And Its Estate.................................21

    D.   The Public Interest Disfavors A Stay................................................21

    E.   Movants Fail To Show "Exceptional Circumstances" To Excuse A Bond. ...................................................................22

V.   CONCLUSION....................................................................................23

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Adkins v. Sogliuzzo*,
   625 F. App'x. 565 (3d. Cir. 2015) ........................................................................16

*In re Alcor Energy, LLC*,
   2019 WL 6716420 (D. Del. Dec. 10, 2019) ..........................................................17

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
   2013 WL 5937342 (M.D. Pa. Nov. 4, 2013) ..........................................................20

*Backertop Licensing LLC v. Canary Connect, Inc.*,
   2023 WL 6442270 (D. Del. Oct. 3, 2023) ........................................................20, 21

*Carbon Fuel Co. v. United Mine Workers of Am.*,
   517 F.2d 1348 (4th Cir. 1975) ..............................................................................12

*Chadwick v. Janecka*,
   312 F.3d 597 (3d Cir. 2002) ..................................................................................17

*De Beers Consol. Mines v. U.S.*,
   325 U.S. 212 (1945)................................................................................................19

*Dunkin' Donuts, Inc. v. Three Rivers Ent. & Travel*,
   42 F. App'x 573 (4th Cir. 2002) ............................................................................15

*E. End Taxi Servs., Inc. v. Virgin Islands Taxi Ass'n, Inc.*,
   2008 WL 570948 (D.V.I. Feb. 6, 2008) ................................................................12

*Egnotovich v. Greenfield Twp. Sewer Auth.*,
   378 F. App'x. 121 (3d Cir. 2010) ..........................................................................16

*In re Finova Grp., Inc.*,
   2007 WL 3238764 (D. Del. Oct. 31, 2007)............................................................22

*Fox v. Cap. Co.*,
   299 U.S. 105 (1936)................................................................................................12

*Halderman v. Pennhurst State School & Hospital*,
   673 F.2d 628 (3d Cir. 1982) ..................................................................................12

*Harris v. City of Philadelphia*,
    47 F.3d 1311 (3d Cir. 1995) ..................................................................15

*Hayes v. Cape Henlopen Sch. Dist.*,
    341 F. Supp. 823 (D. Del. 1972)............................................................13

*Hilburn v. Bayonne Parking Auth.*,
    2013 WL 1721648 (D.N.J. Apr. 19, 2013).............................................22

*J.D. v. Price*,
    619 F. Supp. 3d 523 (W.D. Pa. 2022)....................................................14

*In re Linerboard Antitrust Litig.*,
    2010 WL 3928638 (E.D. Pa. Oct. 5, 2010) ...........................................15

*In re Los Angeles Dodgers LLC*,
    465 B.R. 18 (D. Del. 2011)....................................................................12

*Maness v. Meyers*,
    419 U.S. 449 (1975)................................................................................1

*Martinez v. New York*,
    2008 WL 343556 (D.N.J. Jan. 28, 2008)...............................................13

*Moteles v. University of Pennsylvania*,
    730 F.2d 913 (3d Cir. 1984) ..................................................................17

*Perez v. Weir*,
    2015 WL 4545276 (W.D. Pa. July 28, 2015) (Br. ) ..............................16

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015) ..................................................................11

*Roe v. Operation Rescue*,
    920 F.2d 213 (3d Cir. 1990) ..................................................................16

*S.D. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*,
    927 F.3d 763 (3d Cir. 2019) ..................................................................12

*Sec'y U.S. Dep't of Labor v. Koresko*,
    726 F. App'x 127 (3d Cir. 2018) ...........................................................13

*In re Tribune Co.*,
   477 B.R. 465 (D. Del. 2012)...............................................................22

*U.S. v. Stine*,
   646 F.2d 839 (3d Cir. 1981) ..............................................................1

*In re Uni-Marts, LLC*,
   404 B.R. 767 (Bankr. D. Del. 2009)..................................................21

*In re United Merchants & Mfrs., Inc.*,
   138 B.R. 426 (D. Del. 1992)...............................................................22

*In re Ursa Operating Co. LLC*,
   2021 WL 1751852 (D. Del. May 4, 2021) ........................................11

*Valerino v. Holder*,
   2014 WL 4198501 (D.V.I. Aug. 22, 2014) ........................................15

*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013).......................20

*Wachtel v. Health Net, Inc.*,
   2007 WL 1101436 (D.N.J. Apr. 10, 2007).................................20, 21

## <u>Statutes & Rules</u>

28 U.S.C. § 158.............................................................................17

Fed. R. Bankr. P. 7062..................................................................22

Fed. R. Civ. P. 43 ............................................................7, 11, 14, 15

Fed. R. Civ. P. 62 ..........................................................................22

Debtor-Plaintiff-Appellee BYJU'S Alpha, Inc. ("Debtor") and Intervenor-Appellee GLAS Trust Company LLC ("GLAS") respectfully submit this opposition to the *Motion for A Stay Pending Appeal of Contempt Order and Preliminary Injunction* ("Motion" or "Br.," Dist. D.I. 5[2]) filed by Defendants-Appellants Camshaft Capital Fund, LP, Camshaft Capital Advisors, LLC, and Camshaft Capital Management, LLC (collectively, "Camshaft") and Appellant William Morton (with Camshaft, "Movants").

## I.   **PRELIMINARY STATEMENT**

"It is fundamental to our legal system that 'all orders and judgments of courts must be complied with promptly.'"  *United States v. Stine*, 646 F.2d 839, 845 (3d Cir. 1981) (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)).  Movants have been flouting that principle in furtherance of a half-billion-dollar fraudulent transfer scheme.  Fortunately, the Bankruptcy Court has begun to thwart Movants' tactics. This Court should do the same by denying Movants' meritless Motion.

Movants were, and might still be, in possession of $533 million that was fraudulently transferred to them and should be returned to the Debtor.  To help determine the whereabouts of that $533 million, the Debtor propounded straightforward discovery requests upon Movants (who are effectively just

---

[2] References to this appeal's docket and the underlying adversary proceeding docket are identified as "Dist. D.I. _" and "Adv. D.I. _", respectively.

Morton—the founder, CEO, and seemingly only employee of Camshaft).   In response, Morton (1) refused to comply with the requests, even after a March 1 court order requiring his compliance; (2) refused to attend a March 4 court conference where his presence was expressly requested by the Bankruptcy Court; (3) refused to attend a March 14 show-cause hearing where his presence was expressly *ordered* by the Bankruptcy Court, along with notice and warnings of the consequences for failure to appear (including civil confinement); and (4) refused to provide the Bankruptcy Court with even the slightest evidence supporting any of his excuses for his conduct, including that he had been "hospitalized" overseas.   To this day, Camshaft *still* has not complied with its discovery obligations, Morton *still* remains at large, and the $533 million is *still* unaccounted for.

Having provided ample notice, warnings, and hearings, the Bankruptcy Court justifiably sanctioned Movants for their repeated, willful violations of court orders and their outright contempt for the legal system.  Adv. D.I. 80 ("Contempt Order"). The Bankruptcy Court also correctly entered a preliminary injunction freezing the $533 million.  Adv. D.I. 84 ("PI Order").  The Bankruptcy Court then properly denied Movants' request to stay both orders pending appeal.

This Court should likewise deny Movants' motion to stay.  Movants fail to satisfy their burden for obtaining such extraordinary relief.  They have not demonstrated a likelihood of prevailing on their appeal of either the Contempt Order

or the PI Order.  Moreover, they barely even try to show that they will suffer irreparable harm absent a stay—and for good reason, because compliance with the underlying discovery order would purge the contempt, monetary sanctions are reversible, and Movants themselves claim not to possess the funds and thus cannot be harmed (much less irreparably) by a freezing injunction.  Movants also waited a full thirteen days before first moving to stay—a substantial delay that refutes any alleged irreparable harm.

The Motion should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Movants' Effectuation Of Three Fraudulent Transfers.

The Debtor is a special purpose vehicle formed by its former ultimate corporate parent, Think and Learn Private Limited ("T&L").  Adv. D.I. 115 ("Opn.") 2-3.  Riju Ravindran served as the Debtor's sole director/officer until March 3, 2023.  *Id.*  In November 2021, the Debtor—with T&L and its affiliates serving as guarantors—borrowed $1.2 billion from certain lenders ("Lenders") with GLAS serving as the Lenders' agent.  *Id.* 2-3.  In March and April 2022, the Debtor twice defaulted.

On the heels of those defaults, starting in late April 2022, Ravindran and T&L caused the Debtor to transfer over $533 million of cash ("Alpha Funds") to Camshaft, ostensibly in exchange for a limited partnership interest in Camshaft

Capital Fund ("Camshaft LP Interest").  *Id.*  Morton founded Camshaft, which apparently is under his exclusive control.  The Bankruptcy Court questioned Camshaft's legitimacy, including because "[t]he address for its principal place of business, supplied by Camshaft to the SEC, is actually the address of an IHOP in Miami." *Id.* 4.  This is the ***first*** fraudulent transfer.

In March 2023, right before the Lenders exercised remedies by taking control of the Debtor and appointing Timothy Pohl as its sole director, Movants facilitated Ravindran's and T&L's transfer of the Debtor's Camshaft LP Interest to another T&L subsidiary controlled by Ravindran—Inspilearn LLC ("Inspilearn").  Ex. 1 at 5.  The Camshaft LP Interest—valued then by Movants at almost $540 million(*id.*)— was the Debtor's property but the Debtor received nothing in the Inspilearn transfer.  Ex. 2 ("March 14 Tr.") 24:21-25:6, 56:10-15.  This is the ***second*** fraudulent transfer.

On February 1, 2024, the very day that the Debtor filed for bankruptcy ("Petition Date"), Movants facilitated Inspilearn's transfer of the Camshaft LP Interest to an offshore trust, presumably to move the funds away from U.S. jurisdiction.  Ex. 1 at 4.  Camshaft has refused to identify that offshore trust despite court orders followed by sanctions.  This is the ***third*** fraudulent transfer.

**B.**  **Movants' Willful Violation Of A Discovery Order Aimed At Revealing The Location Of The Alpha Funds.**

On February 2, the Debtor filed the underlying adversary proceeding asserting fraudulent transfer claims against Camshaft, seeking to recover the Alpha Funds—almost certainly the single largest asset of the Debtor's estate.

On February 5, the Bankruptcy Court held the first day hearing and directed Camshaft to confer with the Debtor to locate the Alpha Funds.  Ex. 3 ("Feb. 5 Tr.") 51:10-12.  Camshaft refused to confer.

On February 16, the Bankruptcy Court granted expedited discovery, requiring Camshaft to provide discovery regarding the Alpha Funds.  Adv. D.I. 22.  In response, Camshaft disclosed, for the first time, that it facilitated transferring the Alpha Funds overseas to a "non-US Trust" on the Petition Date.  But Camshaft refused to identify the "non-US Trust."  Ex. 1 at 4.

On February 27, the Bankruptcy Court held a conference to address Camshaft's deficient discovery responses and instructed Camshaft to make "full disclosure by Friday [March 1]."  Ex. 4 ("Feb. 27 Tr.") 11:5-7.  Camshaft refused and moved for a protective order.  Adv. D.I. 28.

On March 1, the Bankruptcy Court denied a protective order and ordered Camshaft to provide discovery by the end of day ("March 1 Order").  Ex. 5 ("March 1 Tr.") 25:2-10.  To ensure Camshaft's compliance, the court set a status conference for Monday, March 4.  The court warned that, "[a]s part of that status conference,"

5

it "will consider whether or not [it is] going to issue a notice to show cause" if Camshaft failed to provide discovery. *Id.* 25:2-10. It also requested Morton's in-person appearance for the conference. *Id.* 25:11-15.

Camshaft refused to comply with that order. Instead, on March 1, Morton fled overseas. Ex. 6 ("March 4 Tr.") 3:20-24.

### C.   The Show-Cause Order, With Notice Of Sanctions Including Civil Confinement.

On March 4, the Bankruptcy Court held a conference to address Camshaft's violation of the March 1 Order. An hour before the conference, Camshaft's counsel advised the court that Morton was in transit to Dubai, and therefore would not attend the court conference in person despite the court's request. Br. Ex. B at 1. During the conference, Camshaft's counsel confirmed that Movants willfully violated the March 1 Order: counsel "advised [Morton] that he should produce the documents" but "he declined." March 4 Tr. 4:16-18.

Consequently, the Bankruptcy Court determined to hold a hearing for Movants to show cause why they should not be held in contempt for violating the March 1 Order. The court explicitly warned Morton that "one of the possible remedies [that it is] going to impose for the contempt is civil confinement if he doesn't comply with the order" and that it "want[s] to give him every opportunity to be heard on that before [it] impose[s] that penalty." *Id.* 12:8-14. Camshaft's counsel requested that the show-cause hearing be scheduled after March 6, in order to

6

comply with due process. *Id.* 11:20-24. The court agreed and ordered Morton to "appear in person" for a show-cause hearing on March 14. Adv. D.I. 56. The court reiterated that it would "consider all possible sanctions against Camshaft and Mr. Morton, including placing Mr. Morton in civil confinement until he purges himself of such contempt." *Id.*

### D. The Contempt Order Following Morton's Failure To Appear At The Show-Cause Hearing And Continued Defiance Of The Discovery Order.

At 3:54 pm on the eve of the March 14 show-cause hearing, Camshaft's counsel informed the Bankruptcy Court that Morton would not attend the hearing in person, because he was allegedly hospitalized and remained overseas. Opn. 6. Morton requested to appear remotely. *Id.* Consistent with Chambers Procedures and Federal Rule of Civil Procedure 43, the court responded that, to determine whether to permit Morton's remote testimony, it needed (1) *some* proof that Morton had *actually* been hospitalized and his whereabouts, (2) clarification as to whether his own counsel would appear at the hearing, and (3) clarification as to whether he intended to comply with the March 1 Order. Opn. 6-7.

The next day, merely thirty minutes before the show-cause hearing, Camshaft's counsel informed the Bankruptcy Court that, *mirabile dictu*, Morton had been discharged from his supposed hospitalization—but Morton still would not appear at the hearing in person. Opn. 7. Neither would Morton's counsel. *Id.*

Camshaft's counsel also disclosed that Morton still did not intend to comply with the March 1 Order. *Id.* Camshaft's counsel requested that Morton be permitted to testify remotely but did not present any good cause to justify that atypical request; indeed, Morton never provided any evidence of his supposed hospitalization or discharge, his whereabouts, or why he could not have attended the show-cause hearing in person. The court denied Morton's request to testify remotely for failure to show good cause. Mar. 14 Tr. 4:20-5:8.

At the show-cause hearing, Movants did not present any evidence or argument to justify their refusal to comply with court orders. Movants also never explained why they—a hedge fund purporting to have managed hundreds of millions of dollars—would be unable to pay the fines. Movants simply identified Camshaft's deficient interrogatory response that Morton said he did not have the Alpha Funds. *Id.* 7:18-22. The Bankruptcy Court declined to credit Morton's statement given his "absolute contempt for the court." *Id.* 7:23-8:2. The court further found that "Camshaft's brazen insistence on concealing the location and control of [the Alpha Funds] strongly indicates that it retains some ownership and control over it"— controverting Morton's unsubstantiated statement that he lacked access to the Alpha Funds. Opn. 23.

Having concluded that Movants' conduct satisfied the standard for contempt (Opn. 8), the Bankruptcy Court entered the Contempt Order, imposing a daily fine

of $10,000 on each of Camshaft and Morton and ordering Morton's confinement. *Id.* 9  Because Morton remained at large, the court held "a chambers conference with the U.S. Marshals, debtor's counsel, the U.S. Trustee's counsel" to discuss "Mr. Morton and whatever information the debtor[] had about Mr. Morton and how to locate him." March 14 Tr. 7:7-11.  Camshaft had notice of that conference but never requested to attend.

The Bankruptcy Court also addressed Camshaft's only due process objection—that the Contempt Order was entered without Morton's presence—explaining that Morton had received more than sufficient process given his failure to appear or "provide an adequate excuse for why he could not be here." *Id.* 8:6-12. Camshaft's counsel made no further objection. *Id.* 8:13.

### E.   The PI Order Following An Evidentiary Hearing Where Camshaft Presented No Evidence.

Also on March 14, the Bankruptcy Court granted the Debtor's preliminary injunction motion.  Camshaft did not present any witnesses or evidence.  Neither did Camshaft examine any witnesses that the Debtor and Ravindran put on.  Ravindran testified at the hearing remotely after he explained his overseas presence to the court, and the court found good cause, to which Camshaft did not object. *Id.* 14:1-15:11. Throughout the hearing, Camshaft chose to only "make two quick points," *Id.* 153:25-154:1, to which both the Debtor and GLAS responded. *Id.* 164:8-168:4.

Having found that the Debtor was likely to succeed on its claims and that it would suffer irreparable harm absent preliminary injunctive relief, the Bankruptcy Court entered the PI Order (Adv. D.I. 82,84) and later issued a supplementary opinion further explaining its rulings.  Adv. D.I. 115.  In its opinion, the court thoroughly addressed Camshaft's arguments.

### F.   <u>The Order Denying Movants' Stay Motion.</u>

On March 19, Camshaft appealed the Contempt Order and the PI Order; Morton later joined the appeal.  On March 27—***13 days*** after the entry of the orders—Movants moved for a stay pending appeal in the Bankruptcy Court.

On April 9, the Bankruptcy Court denied Movants' stay motion, ruling they failed to demonstrate any likelihood of success on appeal and irreparable harm absent the stay.  Ex. 7 (<u>April 9 Tr.</u>) 49:2-9.  In particular, the court found that Morton "is not likely to suffer irreparable harm by the continued imposition of the [contempt] order" because "[c]ompliance with the [discovery] order would purge the contempt."  *Id.* 49:10-14.  It also found that the fines are "subject to reversal" if Movants prevail on appeal, and thus would not cause irreparable harm.  *Id.* 49:15-17.

The court ruled that Movants' appeal of the Contempt Order is unlikely to succeed because Morton "was afforded certainly meaningful opportunity and notice of the relief that the Court would be considering at the hearing that it held and,

likewise, that he had a full and fair opportunity to participate." *Id.* 50:2-8.  It rejected Movants' disparate-treatment argument regarding Ravindran's remote testimony. *Id.* 50:9-51:8.  The court stated that, unlike Ravindran, Morton failed to justify the "extraordinary relief" of remote appearance under Rule 43.  *Id.* 50:15-51:8.

The court also concluded that Camshaft is unlikely to succeed on the appeal of the PI Order and would suffer no irreparable harm absent a stay.  *Id.* 51:9-21.  In particular, it questioned Camshaft's alleged harm given that Camshaft cannot violate the PI Order if—as it claims (*id.* 11:18-23)—it does not have the Alpha Funds.

## III.   LEGAL STANDARD

A stay pending appeal is an "extraordinary remedy."  *In re Ursa Operating Co. LLC*, 2021 WL 1751852, *4 (D. Del. May 4, 2021).  Movants bear the burden to establish that (1) they have made "a strong showing that [they are] likely to succeed on the merits," (2) they "will be irreparably injured absent a stay," (3) "the issuance of the stay will [not] substantially injure the other parties interested in the proceeding," and (4) public interest favors a stay.  *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

This Court reviews the Bankruptcy Court's denial of a stay pending appeal for "abuse of discretion, giving proper regard to the [Bankruptcy Court]'s feel of the case."  *S.D. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019); *see In re Los Angeles Dodgers LLC*, 465 B.R. 18, 28 (D. Del.

2011).  As Movants concede (Br. ¶¶18, 27), furthermore, both the Contempt Order and the PI Order are reviewed for abuse of discretion.

## IV.   ARGUMENT

### A.   Movants Are Unlikely To Succeed On Appeal.[3]

#### 1.   Movants' Appeal Of The Contempt Order Is Unlikely To Succeed.

As a threshold matter, Camshaft's appeal of the Contempt Order is unlikely to succeed because, as a party to the underlying proceeding, it lacks the right to appeal a civil contempt order "except in connection with an appeal from a final judgment or decree"—which is absent here.  *Fox v. Cap. Co.*, 299 U.S. 105, 108 (1936); *see, e.g.*, *Halderman v. Pennhurst State School & Hospital*, 673 F.2d 628, 636 (3d Cir. 1982) (same); *E. End Taxi Servs., Inc. v. Virgin Islands Taxi Ass'n, Inc.*, 2008 WL 570948, *7 (D.V.I. Feb. 6, 2008) (party cannot appeal civil contempt order "except in connection with appeal from a final judgment in the main action") (citing *Carbon Fuel Co. v. United Mine Workers of Am.*, 517 F.2d 1348, 1349 (4th Cir. 1975)).  Movants do not contend otherwise.  *See* Br. ¶19.  Because "lack of jurisdiction will preclude likelihood of success of the merits," Camshaft's appeal of the Contempt Order is unlikely to succeed.  *Martinez v. New York*, 2008 WL 343556, *2 (D.N.J. Jan. 28, 2008).

---

[3]  Appellees reserve the right to raise additional arguments in briefing the merits of Movants' appeal.

Movants' appeal of the Contempt Order, which rests solely on due process grounds (Br. ¶¶20-26), is also unlikely to succeed on the merits. The Bankruptcy Court—in denying a stay—concluded that Movants' due process challenge is unlikely to succeed because "Morton … was afforded certainly meaningful opportunity and notice of the relief that the Court would be considering at the hearings" and "had a full and fair opportunity to participate." Apr. 9 Tr. 50:3-8. That determination was correct, and certainly not an abuse of discretion.

Movants argue (Br. ¶¶20-23) that the Bankruptcy Court violated due process by refusing to allow Morton to testify remotely. To begin with, that contention ignores the other opportunities that the court gave Morton to be heard, none of which he utilized. A party "cannot bypass or refuse to participate in [due process procedures] actually provided and subsequently challenge their unavailability." *Hayes v. Cape Henlopen Sch. Dist.*, 341 F. Supp. 823, 835 (D. Del. 1972); *see Sec'y U.S. Dep't of Labor v. Koresko*, 726 F. App'x 127, 133 (3d Cir. 2018) (party who "received adequate notice" of the contempt hearing yet "chose not to attend [the contempt hearing]" or "object in writing" cannot subsequently assert due process challenge). Here, the Bankruptcy Court requested that Morton attend the March 4 conference to explain Movants' willful violation of the March 1 Order, but Morton refused to appear and fled overseas. Opn. 5. The court then provided Morton another opportunity to be heard at the March 14 show-cause hearing. Opn. 6. The

court gave advance notice that Morton must appear in person, and postponed the hearing as requested by Camshaft.  Yet Morton still failed to appear in person as ordered.  Therefore, his due process challenge is unlikely to succeed.

Moreover, requiring Morton to provide any testimony in person did not violate due process—and was certainly within the Bankruptcy Court's broad discretion—because Movants failed to overcome the strong presumption of in-person testimony under Rule 43(a).  "[L]ive testimony in open court is a deeply entrenched default that will only be excused when three factors are met—good cause, compelling circumstances, and appropriate safeguards." *J.D. v. Price*, 619 F. Supp. 3d 523, 526 (W.D. Pa. 2022); Apr. 9 Tr. 50:15-18 (remote testimony is "essentially extraordinary relief").  Movants established none.  All Movants asserted was Morton's unsubstantiated hospitalization overseas.  But when the court requested proof, Morton provided none—and *still has not*, to this day.  *Id.* 51:4-8 ("there was no meaningful response to the Court's inquiry with respect to the veracity or the foundation of the contention that Mr. Morton was unable to travel or otherwise unable to participate directly with the hearing").  The court was well within its discretion to decline to permit Morton to testify remotely without any substantiation of his mysterious hospitalization (and quick recovery once the court demanded proof).  *See, e.g.*, *Valerino v. Holder*, 2014 WL 4198501, *2 (D.V.I. Aug.

22, 2014) (disallowing remote testimony because party did not "provide any factual basis" to satisfy Rule 43's "stringent requirement").[4]

Movants also wrongly criticize (Br. ¶24) the Bankruptcy Court for not holding an evidentiary hearing.   The show-cause hearing ***was*** the evidentiary hearing.[5] Morton failed to appear despite being ordered to do so, offered no credible reason for his absence, and Movants chose not to present any evidence to carry their burden "to show that [they had] made 'in good faith all reasonable efforts to comply'" with court orders. *Harris v. City of Philadelphia*, 47 F.3d 1311, 1324 (3d Cir. 1995).  The court thus proceeded to render a decision based on the evidence before it.  Opn. 8-9. Movants' own authorities reject their argument, because an "evidentiary hearing … is not required" where parties, like Movants here, "are given ample notice and an opportunity to respond, and [they] fail[] to present any arguments creating any material issue of fact." *In re Linerboard Antitrust Litig.*, 2010 WL 3928638, *4 (E.D. Pa. Oct. 5, 2010) (Br. ¶24); *see Roe v. Operation Rescue*, 920 F.2d 213, 217

---

[4]  Contrary to Movants' assertion (Br. ¶22), it is irrelevant that the Bankruptcy Court permitted Ravindran to testify remotely.  Ravindran was not ordered to attend a show-cause hearing "in person."  Regardless, a court has discretion to conclude that one witness has satisfied the standard to testify remotely, while another has not.

[5]   *Dunkin' Donuts, Inc. v. Three Rivers Ent. & Travel,* 42 F. App'x 573 (4th Cir. 2002) (Br. ¶24), is distinguishable because the court there cancelled the show-cause hearing, while the hearing here proceeded as scheduled.

(3d Cir. 1990) (no hearing needed where "record is devoid of evidence that the defendant extended any effort to arrange for his attendance at the hearing") (Br. ¶20).

Similarly, the Bankruptcy Court was well within its discretion in setting the fines. *Contra* Br. ¶24. Movants "bear[] the burden of producing evidence of [their financial] inability to comply with the sanctions order." *Egnotovich v. Greenfield Twp. Sewer Auth.*, 378 F. App'x. 121, 123-24 (3d Cir. 2010). They produced none. Thus, this case is distinguishable from *Perez v. Weir*, 2015 WL 4545276 (W.D. Pa. July 28, 2015) (Br. ¶24), where the contemnor submitted uncontested evidence showing "he has no substantial assets and extraordinary liabilities." *Id.* at *3 n.4.

Movants next challenge (Br. ¶25) the Bankruptcy Court's credibility finding as a "premeditated … assessment," because Morton did not testify. Courts may properly assess credibility despite a witness's failure to testify. *See Adkins v. Sogliuzzo*, 625 F. App'x. 565, 572 (3d Cir. 2015) (affirming adverse inference from witness's refusal to testify). Moreover, the court's conclusion that Morton had "zero credibility" stems from his "absolute contempt for the court"—which is well supported by the record. March 14 Tr. 5:4-8, 7:23-8:2.

Finally, Movants' ongoing violation of the discovery order—notwithstanding the Contempt Order—negates their argument (Br. ¶26) that the Bankruptcy Court should have considered a less intrusive sanction. The court *did* expressly conclude, after considering other sanctions, that under the circumstances here "both monetary

16

sanctions and civil confinement are the least coercive sanctions available." Opn. 9 n.37; *see Chadwick v. Janecka*, 312 F.3d 597, 608 (3d Cir. 2002) (permissible to hold contemnor in confinement until compliance with underlying order).

>    2.    Camshaft's Appeal Of The PI Order Is Unlikely To Succeed.

Camshaft principally challenges (Br. ¶31) the PI Order on the basis of the Bankruptcy Court "ignoring Camshaft's defenses or not considering them adequately." But Camshaft chose to limit its argument at the preliminary injunction hearing to "two quick points," and the record reflects the court duly considered and rejected all its arguments. *See., e.g.*, Mar. 14 Tr. 153:25-156:13, 164:8-9; PI Order at 1 ("the Court having reviewed … all briefs supporting and opposing the [PI Motion]"); Opn. 19-23.[6]

Regardless, the *post hoc* defenses that Camshaft now raises are unlikely to succeed on appeal, including for want of evidence.[7]

*First*, Camshaft is not a "mere conduit" to the fraudulent transfers because uncontroverted evidence demonstrates that they exercised "dominion and control" over the Alpha Funds. The Bankruptcy Court found that Camshaft's refusal to locate

---

[6]  Contrary to Camshaft's assertion, it has no right to appeal the PI Order, which is not a "final judgment[], order[], [or] decree[]." 28 U.S.C. § 158(a); *see, e.g.*, *In re Alcor Energy, LLC*, 2019 WL 6716420, *5 (D. Del. Dec. 10, 2019).

[7]  *Moteles v. University of Pennsylvania,* 730 F.2d 913, 921 (3d Cir. 1984), is thus inapposite, because the court there held that exclusion of evidence relevant to a defense was reversible error.

the Alpha Funds indicates that it may continue to control the Alpha Funds.  Opn. 23. Additionally, Camshaft's investment brochure stated that Camshaft is "solely responsible" for investing the Alpha Funds.  Ex. 8 at 11.  Finally, unlike an account balance, the Debtor cannot transfer the Camshaft LP Interest "without [] prior written consent from" Camshaft.  *Id.* at 9.

*Second*, Movants' reasonable equivalent value defense is irrelevant and meritless.  The Bankruptcy Court found that the Debtor is likely to succeed on its actual fraudulent transfer claim against Camshaft, Opn. 18, which does not require establishing reasonably equivalent value.  On the Debtor's separate constructive fraudulent transfer claim, the court found that Camshaft lacks legitimacy, refuting any claim that a limited partnership interest in this sham hedge fund can be of reasonably equivalent value to the $533 million cash.  Opn. 20.  And while Camshaft asserts (Br. ¶33) that the later appreciation of $533 million investment "bars a claim for constructive fraudulent transfer," the court correctly rejected this argument for two reasons.  Ravindran's testimony showed that the Debtor did not receive any reasonably equivalent value when the transfer occurred.  Opn. 20.  And, reasonably equivalent value must be assessed at the time of the transfer, not after.  Opn. 20. Moreover, the Debtor received ***none*** of the appreciation—it still does not know where the Alpha Funds are.

18

*Third*, Camshaft wrongly claims (Br. ¶34) that the Bankruptcy Court ignored the Debtor's director Pohl's testimony that the Lenders were satisfied that the Alpha Funds were not dissipated in March 2023 when those funds were already with Camshaft. The court specifically considered this testimony and invited the Debtor and GLAS to respond. March 14 Tr. 164:8-168:4. The record shows that, in March 2023, the Lenders and Pohl did not know about Camshaft or the Camshaft or Inspilearn transfers, and they were deceived, being led to believe that the Alpha Funds were still within the Debtor and existed in cash. *Id.* 166:1-167:18. In any event, the Lenders' knowledge or belief has no bearing on any element of the Debtor's fraudulent transfer claims.

Camshaft's last argument (Br. ¶35) that injunctive relief is inconsistent with the Debtor's allegations is baseless. The case that Camshaft cites, *De Beers Consolidated Mines v. United States*, 325 U.S. 212 (1945), denied the injunction only because the property to be frozen was "wholly outside the issues in the suit." *Id.* at 220. That is the opposite of this case, where the assets being frozen are the *res* of the case—the Alpha Funds.

### B.    No Irreparable Harm Absent A Stay.

The Bankruptcy Court also correctly ruled that Movants would not suffer irreparable harm absent a stay. *Contra* Br. ¶37. The court found that enforcing the Contempt Order would not irreparably harm Movants because "[c]ompliance with

the [discovery] order would purge the contempt," and "monetary sanction[s] associated with the appeal would be obviously subject to reversal."   April 9 Tr. 49:10-19.   Indeed, Movants "need not suffer any injury—let alone an irreparable injury," if they just comply with the court's order.   *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 6442270, *2 (D. Del. Oct. 3, 2023) (denying stay pending appeal of contempt order).   Moreover, contrary to Movants' position, the risk of mootness of Movants' appeal "by itself is insufficient to demonstrate irreparable injury for purposes of a stay," otherwise "a stay would be issued in every" appeal.   *In re W.R. Grace & Co.*, 475 B.R. 34, 206-07 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013).   Instead, the existence of irreparable harm turns on the nature of the injury allegedly resulting from the compliance with the order.   *Id.*   Here, Movants fail to present "any evidence of irreparable injury from complying with the Court's orders to produce the requested documents."   *Wachtel v. Health Net, Inc.*, 2007 WL 1101436, *4 (D.N.J. Apr. 10, 2007) (denying stay of contempt order); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 2013 WL 5937342, *1 (M.D. Pa. Nov. 4, 2013) (monetary sanction not irreparable harm).

The PI Order—which merely freezes assets—likewise will not irreparably harm Camshaft.   The injunction does not require Camshaft to do anything; it merely preserves the *status quo*, preventing Camshaft from transferring any Alpha Funds in its possession.   Camshaft has not articulated any harm.   And if, as Camshaft insists

(Br. ¶37), Camshaft does not possess the Alpha Funds, Camshaft cannot possibly violate the injunction, let alone suffer irreparable harm from it.  April 14 Tr. 11:18-23.

### C.     A Stay Would Harm The Debtor And Its Estate.

Movants ignore (Br. ¶ 38) that staying the Contempt Order would harm the Debtor and its estate, particularly given Movants' ongoing refusal to produce "documents [the Debtor has] been entitled to" regarding the whereabouts of the Alpha Funds.  *Wachtel*, 2007 WL 1101436, at *4.  A stay would allow Movants to continue to conceal the Alpha Funds with impunity, amplifying the risk of dissipation.  Opn. 22; March 14 Tr. 115:3-116:3, 179:1-11.

Similarly, staying the PI Order would harm the Debtor because it cannot stop Camshaft from dissipating the Alpha Funds if Camshaft comes to control the funds again (if not already).  Given Movants' "brazen insistence on concealing the location and control of this money," Opn. 23, and their fraudulent transfer schemes, the risk is material.

### D.     The Public Interest Disfavors A Stay.

Contrary to Movants' cursory argument (Br. ¶39), a "vital public interest" lies in ensuring compliance with court orders and the administration of justice, which strongly disfavors staying the Contempt Order.  *Backertop Licensing*, 2023 WL 6442270, at *3.  Additionally, the significant public interest in the efficient and

orderly administration of the Debtor's estate weighs heavily against a stay. *In re Uni-Marts, LLC*, 404 B.R. 767, 778 (Bankr. D. Del. 2009). The Orders seek to locate and secure the Alpha Funds, which are crucial to the Debtor's ability to manage the estate.

### E. Movants Fail To Show "Exceptional Circumstances" To Excuse A Bond.

Although Movants have not satisfied their burden to obtain a stay, if this Court were to conclude otherwise, any stay should be conditioned on the posting of a substantial bond. Fed. R. Civ. P. 62(d), made applicable here through Fed. R. Bankr. P. 7062, requires Movants to post a supersedeas bond to obtain a stay absent "exceptional circumstances and where there exists an alternative means of securing the [non-movants'] interest." *Hilburn v. Bayonne Parking Auth.*, 2013 WL 1721648, *2 (D.N.J. Apr. 19, 2013). Movants do not even attempt to carry their "burden of demonstrating why a court should deviate from the ordinary full security requirement." *In re Tribune Co.*, 477 B.R. 465, 482 n.11 (D. Del. 2012). They identify no "exceptional circumstances" and offer no alternative security. Their only argument—that a stay "would not result in any injury to the Debtor" is simply wrong, *see supra* §IV.C.[8]

---

[8] The significant harm to the Debtor from a stay renders Movants' cases inapposite. In *In re Finova Grp., Inc.*, 2007 WL 3238764, *1 (D. Del. Oct. 31, 2007), the possibility of a delayed wind-up was the only asserted harm absent a stay. In *In re*

## V.  <u>CONCLUSION</u>

For all these reasons, the Court should deny the Motion.

Dated:        April 22, 2024           Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

<u>/s/ Kenneth J. Enos</u>
Robert S. Brady (Del. No. 2847)
Kenneth J. Enos (Del. No. 4544)
Jared W. Kochenash (Del. No. 6557)
Timothy R. Powell (Del. No. 6894)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
kenos@ycst.com
jkochenash@ycst.com
tpowell@ycst.com

**QUINN EMANUEL URQUHART
 & SULLIVAN, LLP**

Susheel Kirpalani (admitted *pro hac vice*)
Benjamin Finestone (admitted *pro hac vice*)
William B. Adams (admitted *pro hac vice*)
Daniel Holzman (admitted *pro hac vice*)
Jianjian Ye (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel.: (212) 849 7000
susheelkirpalani@quinnemanuel.com
benjaminfinestone@quinnemanuel.com

---

*United Merchants & Mfrs., Inc.*, 138 B.R. 426, 428-30 (D. Del. 1992), the motion concerned a stay of certain stock distributions.

williamadams@quinnemanuel.com
danielholzman@quinnemanuel.com
jianjianye@quinnemanuel.com

*Counsel for Debtor-Plaintiff-Appellee BYJU's Alpha, Inc.*

*/s/ Laura David Jones*

**PACHULSKI STANG ZIEHL &
JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
Po Box. 8705
Wilmington, Delaware 19801
(302) 652-4100
ljones@pszjlaw.com
pkeane@pszjlaw.com

**KIRKLAND & ELLIS LLP**
George W. Hicks, Jr., P.C. (*pro hac vice* forthcoming)
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
george.hicks@kirkland.com

Seth M. Cohen (*pro hac vice* forthcoming)
555 California Street
San Francisco, CA 94144
(415) 439-1500
seth.cohen@kirkland.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
patrick.nash@kirkland.com

Brian Schartz, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
brian.schartz@kirkland.com

*Counsel for Intervenor-Appellee GLAS Trust Company LLC*