Civil Action No. 24-cv-00358 (MN)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BYJU's ALPHA, INC.,<br><br>      Debtor. | Chapter 11<br><br>Case No. 24-10140 (JTD) |
| BYJU'S ALPHA, INC.,<br><br>      Plaintiff,<br><br>    v.<br><br>CAMSHAFT CAPITAL FUND, LP;<br>CAMSHAFT CAPITAL ADVISORS,<br>LLC; CAMSHAFT CAPITAL<br>MANAGEMENT, LLC; RIJU<br>RAVINDRAN; and INSPILEARN LLC,<br><br>      Defendants. | Adv. Pro. Case No. 24-50013 (JTD)<br><br>Appeal from the United States<br>Bankruptcy Court for the District of<br>Delaware |

**APPELLANTS' REPLY IN FURTHER SUPPORT
OF MOTION FOR A STAY PENDING APPEAL OF
CONTEMPT ORDER AND PRELIMINARY INJUNCTION**

*(Counsel Listed on Next Page)*

\\4133-1916-5519  v2

HOGAN LOVELLS US LLP
Pieter Van Tol*
Christopher R. Bryant*
Elizabeth Carter*
390 Madison Avenue
New York, NY  10017
Tel: (212) 918-3000
Email: pieter.vantol@hoganlovells.com
        chris.bryant@hoganlovells.com
        elizabeth.carter@hoganlovells.com


and


HOGAN LOVELLS US LLP
David Massey*
600 Brickell Avenue
Suite 2700
Miami, FL 33131
Tel: (305) 459-6500
Email: david.massey@hoganlovells.com


Dated: April 29, 2024
Wilmington, Delaware


*  Admitted *pro hac vice*

SAUL EWING LLP
Evan T. Miller (No. 5364)
1201 N. Market Street Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Tel: (302) 421-6864
Email: evan.miller@saul.com


   and


SAUL EWING LLP
Turner N. Falk*
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Tel: (215) 972-7777
Email: turner.falk@saul.com

*Counsel for Appellants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..........................................................................................ii

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     ARGUMENT .............................................................................................. 2

      A.      The Court Should Enter a Stay .......................................................... 2

             1.      Appellants Are Likely to Succeed on the Merits ..................... 3

                    i)      The Contempt Order Violates Due Process ................... 3

                    ii)     The Bankruptcy Court Abused Its Discretion by Issuing the PI Order ....................................................... 7

             2..     Appellants Will be Irreparably Harmed Absent a Stay ........... 9

             3.      A Stay Pending Appeal Will Not Injure Other Parties .......... 10

             4.      Granting a Stay Is in the Public Interest ............................... 10

      B.      No Bond Is Warranted Here ............................................................. 11

III.    CONCLUSION ......................................................................................... 11

\\4133-1916-5519 v2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Sogliuzzo*,
  625 F. App'x 565 (3d Cir. 2015) ...........................................................................6

*Haldeman v. Pennhurst State School & Hospital*,
  673 F.2d 628 (3d Cir. 1982) ...................................................................................3

*In re Alcor Energy, LLC*,
  2019 WL 6716420 (D. Del. Dec. 10, 2019). (Opp'n.) ..........................................7

*In re Revel AC, Inc.*,
  802 F.3d 558 (3d Cir. 2015) ...................................................................................2

*In re Roche*,
  448 U.S. 1312 (1980)...............................................................................................9

*In re Tribune Co.*,
  477 B.R. 465 (Bankr. D. Del. 2012)......................................................................11

*In re World Imports Ltd.*,
  820 F.3d 576 (3d Cir. 2016) ...................................................................................7

*Merriken v. Cressman*,
  364 F. Supp. 913 (E.D. Pa. 1973).........................................................................4

*Newton v. A.C. & S., Inc.*,
  918 F.2d 1121 (3d Cir. 1990) .................................................................................5

*Roe v. Operation Rescue*,
  920 F.2d 213 (3d Cir. 1990) ...................................................................................5

**Rules**

Fed. R. Bankr. P. 8007(c) .............................................................................................11

Fed. R. Civ. P. 43(a).................................................................................................4, 5

Appellants respectfully submit this reply in response to the Debtor's opposition (the "**Opposition**") and in further support of the stay motion dated April 15, 2024 (the "**Motion**").[1]

## I.        PRELIMINARY STATEMENT

Due process—which includes a meaningful opportunity to be heard—is a fundamental right.  And due process protections reach their highest level where, as here, a person faces confinement.  The Bankruptcy Court deprived Appellants of due process and violated precedent by (a) denying Mr. Morton an opportunity to testify at the contempt hearing (the "**March 14 Hearing**"); (b) failing to make the requisite evidentiary findings; and (c) determining, even before the March 14 Hearing, that it would impose the most intrusive sanction.  (*See* Mot., ¶¶ 20-26.)

The Debtor, however, tries to downplay the denial of due process and asserts that Mr. Morton is responsible for the Bankruptcy Court's refusal to allow him to defend himself.  The Debtor's ploy fails.  The Bankruptcy Court unreasonably imposed confinement without allowing Mr. Morton to speak at the March 14 Hearing, even though it permitted another witness, at the same hearing, to testify remotely.  On that basis alone, Appellants have demonstrated a likelihood of success.

---

[1]     Capitalized terms not defined below shall have the same meaning as in the Motion.

But there is even more here because Camshaft is the subject of the superfluous PI Order. In the face of unrebutted evidence that Camshaft does not possess or control the Alpha Funds, the Bankruptcy Court nonetheless ordered Camshaft to take certain actions regarding those funds.[2] Courts, however, cannot issue orders when compliance with them is impossible. In addition, the Bankruptcy Court blatantly ignored or minimized Camshaft's meritorious defenses in granting the PI Order. These deficiencies in the PI Order further demonstrate Appellants' likelihood of success.

The other critical factor, irreparable harm, likewise supports a stay here. Without a stay, Mr. Morton faces imprisonment and thus cannot travel to his home country. These facts, on their own, warrant a finding of irreparable harm.

## II.     ARGUMENT

### A.     The Court Should Enter a Stay

The parties agree that *In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015), sets forth the standard for stays pending appeal. The Debtor, however, disregards *Revel*'s critical statement that likelihood of success "is arguably the more important piece of the stay analysis." *Id.* at 568.

---

[2]     Such evidence comes from Camshaft's sworn interrogatory responses and Mr. Ravindran's declaration under oath stating that the Alpha Funds are currently within the BYJU's group. (*See* Adv. D.I. 28-4, 4, 6; Adv. D.I. 121-1, ¶ 10.)

2

### 1.       Appellants Are Likely to Succeed on the Merits

#### i)       *The Contempt Order Violates Due Process*

1.       The Debtor alleges that the Contempt Order is not immediately appealable.  (Opp'n, 12.)  But the Debtor ignores the holding in *Haldeman v. Pennhurst State School & Hospital*, 673 F.2d 628 (3d Cir. 1982), that a party may appeal a contempt order when it is incidental to an appealable order.  *Id.* at 636. There is no doubt that Mr. Morton has the right to immediately appeal from the Contempt Order.  (Mot., ¶ 19.)  Thus, Camshaft may appeal from the same order.

2.       The Debtor asserts five arguments regarding the Contempt Order, but each fails:

3.       *First*, the Debtor claims that Mr. Morton did not use "other opportunities" to be heard.  (Opp'n, 13.)  The Debtor's argument is irrelevant and factually incorrect.  The focus should be on the March 14 Hearing, which was the only hearing at which the Bankruptcy Court imposed contempt sanctions.  Mr. Morton did not refuse to attend the March 14 Hearing; he was wrongfully barred from doing so.  Moreover, with regard to the March 4, 2024 status conference, it is not true (as the Debtor repeatedly alleges) that Mr. Morton "refused to appear and fled overseas."  (*Id.*)  Mr. Morton left the country <u>before</u> the Bankruptcy Court scheduled the March 4 conference and he sought permission to participate remotely. (*See* Mot., ¶ 6.)  That reasonable request was denied.  (*See id.*)

3

4.      The Debtor cites two cases where a party waived due process by choosing not to attend hearings.  (Opp'n, 13.)  Those cases do not apply because Mr. Morton sought to attend the March 14 Hearing.  Also, a finding of waiver has a high bar and requires a <u>voluntary</u> surrender of a known right, which is absent here.  *See, e.g.*, *Merriken v. Cressman*, 364 F. Supp. 913, 919 (E.D. Pa. 1973) ("The Supreme Court has indicated that … the Court should indulge in every reasonable presumption against waiver of procedural due process … .").

5.      *Second*, the Debtor contends that Appellants failed to meet the requirements of Fed. R. Civ. P. 43(a) for remote testimony.  (*See* Opp'n, 14-15.) This argument is fatally undermined by the Notes of the Advisory Committee for Rule 43(a), which state: "The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, <u>such as accident or illness, but remains able to testify from a different place</u>."  Adv. Comm. Notes (emphasis added).  That describes this case.

6.      The Debtor claims the Bankruptcy Court was justified in barring Mr. Morton from testifying because of an alleged lack of written proof regarding his unavailability, but the Bankruptcy Court required no such proof from Mr. Ravindran. Mr. Ravindran was not required to submit <u>anything</u> in writing pre-hearing, and instead he was allowed to establish his unavailability through remote testimony.  The Debtor asserts that the differential treatment does not matter because the courts have

the discretion to conclude that one witness meets the Rule 43(a) standard, while another does not.  (Opp'n, 15.)  Here, however, the Bankruptcy Court abused that discretion and there was no basis for treating Mr. Morton differently or holding him to a more stringent standard, <u>especially</u> when Mr. Morton, in contrast to Mr. Ravindran, faced stiff monetary sanctions and confinement.  *See Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1127 (3d Cir. 1990) ("disparate treatment of plaintiffs and defendants" in the context of contempt proceedings would not be "countenanced").

7.      *Third*, the Debtor maintains that there was an evidentiary hearing, but that Appellants "chose not to present any evidence" on contempt issues.  (Opp'n, 15.)  This absurd argument ignores that (1) Mr. Morton, as the Bankruptcy Court acknowledged, is the only evidentiary source for Camshaft on contempt issues (*see* Adv. D.I. 100-6, 5:9-14); and (2) the Bankruptcy Court improperly barred him from testifying.  There was no "choice" in the matter.  The Debtor's argument is akin to gagging someone and then complaining that you cannot understand him.  The Debtor also cites one of Appellants' authorities, *Roe v. Operation Rescue*, 920 F.2d 213 (3d Cir. 1990), but the court there noted that the "record is devoid of evidence that the defendant extended any effort to arrange for his attendance at the hearing." *Id.* at 217.  This case is the opposite.  Mr. Morton repeatedly sought to attend and testify, but the Bankruptcy Court refused to allow it.

5

8.      *Fourth*, the Debtor criticizes Appellants for not presenting evidence on the ability to pay the contempt fines.  (Opp'n, 16.)  Once again, that was because the Bankruptcy Court muzzled Mr. Morton and thus prevented Appellants from providing evidence from the sole source of such information.

9.      *Fifth*, the Debtor tries to defend the Bankruptcy Court's credibility assessment, in the <u>absence</u> of testimony, by claiming that "[c]ourts may properly assess credibility despite a witness's failure to testify."  (Opp'n, 16.)  The authority that the Debtor cites for this proposition, *Adkins v. Sogliuzzo*, 625 F. App'x 565 (3d Cir. 2015), is easily distinguished from this case.  In *Adkins*, the witness invoked his Fifth Amendment right against self-incrimination and, in an application of well-established law, the Third Circuit held that the court was permitted to draw an adverse inference from the invocation.  *Id.* at 572.  The adverse inference rule is not involved here.  The Debtor also claims that the Bankruptcy Court acted properly in concluding that Mr. Morton has "zero credibility" because he was in contempt. (Opp'n, 16.)  Such a tautological conclusion—*i.e.*, that Mr. Morton cannot defend himself against a contempt finding because he is in contempt—is impermissible because it would strip every alleged contemnor of a defense.

10.     *Sixth*, in addressing whether the Bankruptcy Court used the least intrusive sanctions necessary to coerce compliance, the Debtor ignores the record. Ten days before the March 14 Hearing, the Bankruptcy Court stated that: "I am going

to impose for the contempt is civil confinement if [Mr. Morton] doesn't comply with the order." (Adv. D.I. 100-5, 12:8-14.) Thus, it was not just that the Bankruptcy Court had made up its mind before the March 14 Hearing; it had also predetermined that the <u>most</u> intrusive sanction would be ordered. Such an approach directly violates due process and precedent.[3]

        *ii)*       *The Bankruptcy Court Abused Its Discretion by Issuing the PI Order*

11.      The Debtor states that Camshaft "has no right to appeal the PI Order," relying on *In re Alcor Energy, LLC*, 2019 WL 6716420 (D. Del. Dec. 10, 2019). (Opp'n, 17 n.6.) The *Alcor* holding conflicts with Camshaft's authority, *In re World Imports Ltd.*, 820 F.3d 576 (3d Cir. 2016), where the Third Circuit held that the district court could hear an appeal of a bankruptcy court's preliminary injunction. *Id.* at 582 n.5. *Alcor* must yield to the Third Circuit's holding in *World Imports*.

12.      The Debtor also attempts to dismiss Camshaft's defenses as only "*post hoc*" (Opp'n, 17), but they were all raised in pre-PI Order briefing and at the March 14, 2024 hearing. (*See* Mot., ¶¶ 32-36.)

---

[3]      The Debtor also seeks to defend the Bankruptcy Court's highly unusual *ex parte* conference with Debtor's counsel at the March 14 Hearing by stating that "Camshaft had notice of the conference but never requested to attend." (Opp'n, 9.) The Bankruptcy Court, however, expressly limited the attendees and made it clear that Camshaft's counsel was not invited.

13.     The Debtor seeks to avoid a consideration of Camshaft's defenses because it has no answer to them.  For example, in discussing the "mere conduit" defense, the Debtor relies on Camshaft's general investment brochure.  (*See* Opp'n, 18.)  The brochure, however, clearly states that the client's governing documents, not the brochure, controls the relationship.  (Opp'n, Ex. 8, 2.)  Moreover, the two statements from the 45-page brochure cited by the Debtor do not establish that Camshaft had "dominion and control" over the Alpha Funds.  The fact that Camshaft had sole responsibility for investment did not limit the Debtor's transfer rights.  Moreover, Camshaft's consent to transfer is a KYC requirement; it did not give Camshaft the right to transfer the Alpha Funds without the Debtor's consent.

14.     Equally unavailing is the Debtor's argument that the appreciation of the investment of the Alpha Funds has no relevance to the reasonably equivalent value ("**REV**") analysis.  In the Supplemental Opinion, the Bankruptcy Court noted that courts considering the REV issue for investments must consider "whether, based on the circumstances that existed at the time of the transfer, it was legitimate and reasonable to expect some value accruing to the debtor."  (Adv. D.I. 115, 20 (internal quotations omitted).)  The Alpha Funds' appreciation while in Camshaft's custody demonstrates that it was legitimate and reasonable to expect that Camshaft would provide value to the Debtor.

15.     Finally, the Debtor's rebuttal to Mr. Pohl's admission in his sworn declaration—which came only from counsel—makes no sense.  The Debtor now claims that the Lenders and Mr. Pohl would not have been satisfied with the representation in March 2023 if they had known that the Alpha Funds had been transferred from the Debtor.  (Opp'n, 19.)  The Credit Agreement, however, clearly states that the Debtor could invest the Alpha Funds.  (*See* Adv. D.I. 40-1, § 5.8.)  Thus, the Lenders and Mr. Pohl were satisfied as of March 2023 that the Alpha Funds had not been dissipated because they were in the United States, not because they remained with the Debtor.

### 2.     Appellants Will be Irreparably Harmed Absent a Stay

16.     The Debtor relies on inapposite cases in arguing that Appellants have failed to show irreparable harm.  All its cases relate to <u>monetary</u> sanctions.  (*See* Opp'n, 19-20.)  Here, in addition to the risk of mooting the appeal, the lack of a stay would mean that Mr. Morton would continue to have the threat of jail hanging over his head.  *See In re Roche*, 448 U.S. 1312, 1316 (1980) (finding irreparable harm where, absent stay, the applicant faced the "unpalatable choice" compliance with the contempt order, which would moot his appeal, or civil confinement).[4]  An unstayed Contempt Order would continue to preclude Mr. Morton from traveling to

---

[4]     The Debtor ignores *Roche* in the Opposition, thereby conceding that it applies here.

the United States, which irreparably interferes with his business and ability to see

his family in the United States.

17.     Although the irreparable harm caused by the Contempt Order suffices,

the PI Order also results in potential irreparable harm.  The Debtor has shown itself

to be an aggressive litigant undeterred by facts, and it is easy to see the Debtor trying

to blame Camshaft for not preventing the transfer of the Alpha Funds (even though

all evidence demonstrates that Camshaft has no possession or control of the funds).[5]

### 3.     A Stay Pending Appeal Will Not Injure Other Parties

18.     The Debtor's claims of harm fall well short.  It argues that a stay would

allow Appellants to conceal or move the Alpha Funds.  (Opp'n, 21.)  This argument

is contrary to the unrebutted facts showing that Camshaft does not have the funds

in its possession or control.

### 4.     Granting a Stay Is in the Public Interest

19.     The Debtor tries to belittle the public interest in due process (Opp'n,

21), but it is a fundamental right that a stay would vindicate.  By contrast, the

---

[5]     The Debtor suggests that the amount of time between the entry of the Orders and the filing of the Motion on March 27, 2024 somehow undercuts irreparable harm. (*See* Opp'n, 10.)  The Debtor cites no case law supporting such a proposition. In any event, thirteen days elapsed because Appellants were preparing the stay papers and researching their appellate claims, including an appeal from Mr. Morton. Appellants filed the request for a stay on the same day that they filed the amended notice of appeal adding Mr. Morton as an appellant.  They also requested (and obtained) shortened time on the Motion.  (Adv. D.I. 101.)  There was no delay here.

Debtor's only purported public interest is that the Orders "seek to locate and secure the Alpha Funds." (*Id.*, 22.) Given that Camshaft does not possess or control the Alpha Funds, such an interest is not relevant as to Camshaft.

### B.      No Bond Is Warranted Here

20.      The Debtor relies on inapplicable authorities in arguing that Appellants must post a bond. The Debtor's two cases (which are from 2012 and 2013) cite the <u>former</u> version of Fed. R. Civ. P. 62(d). In any event, as the court noted in one of the Debtor's cases, *In re Tribune Co.*, 477 B.R. 465 (Bankr. D. Del. 2012), Rule 62 is "not directly applicable" to bankruptcy cases. *Id.* at 478 n. 11.

21.      Instead, Fed. R. Bankr. P. 8007(c) governs the bond issue and Appellants have shown that a bond is unnecessary because there is no harm to the Debtor here. (*See* Mot., 21-22.) The Debtor argues that a stay would impede its search for the Alpha Funds, but, as discussed above, that issue does not involve Appellants.

### III.    CONCLUSION

Appellants, therefore, respectfully request that the Court enter an order staying the Contempt Order and PI Order (as against Camshaft only) pending appeal.

Dated: Wilmington, DE
      April 29, 2024

HOGAN LOVELLS US LLP
Pieter Van Tol, Esq.*
Christopher R. Bryant, Esq.*
Elizabeth C. Carter, Esq.*
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3000
Email:
     pieter.vantol@hoganlovells.com
     chris.bryant@hoganlovells.com
     elizabeth.carter@hoganlovells.com

- and -

HOGAN LOVELLS US LLP
David Massey, Esq.*
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Tel: (305) 459-6500
Email: david.massey@hoganlovells.com

SAUL EWING LLP

*/s/ Evan T. Miller*
Evan T. Miller (No. 5364)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Tel: (302) 421-6864
Email: evan.miller@saul.com

- and -

Turner N. Falk, Esq.*
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Tel: (215) 972-7777
Email: turner.falk@saul.com

\* Admitted *pro hac vice*

*Counsel for Appellants*

12

\\4133-1916-5519 v2