IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| BYJU'S ALPHA, INC., | ) | Case No. 24–10140 (JTD) |
| | ) | |
| Debtor. | ) | Adv. No. 24–50013 (JTD) |
| ———————————————— | ) | |
| BYJU's ALPHA, INC., | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | |
| v. | ) | |
| | ) | |
| CAMSHAFT CAPITAL FUND, LP, | ) | C.A. No. 24–358 (MN) |
| CAMSHAFT CAPITAL ADVISORS, LLC, | ) | |
| CAMSHAFT CAPITAL MANAGEMENT, | ) | |
| LLC, RIJU RAVINDRAN AND | ) | |
| INSPILEARN LLC, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |
| ———————————————— | ) | |

## <u>OPINION</u>

Pieter Van Tol, Christoper R. Bryant, Elizabeth Carter, HOGAN LOVELLS US, LLP, New York, NY; David Massey, HOGAN LOVELLS US, LLP, Miami, FL; Evan T. Miller, SAUL EWING LLP, Wilmington, DE; Turner N. Falk, SAUL EWING LLP, Philadelphia, PA– Attorneys for appellants Camshaft Capital Fund, LP and William C. Morton.

Susheel Kirpalani, Benjamin Finestone, William B. Adams, Daniel Holzman, Jianjian Ye, QUINN EMANUEL URQUHART & SULLIVAN LLP, New York, NY; Robert S. Brady, Kenneth J. Enos, Jared W. Kochenash, Timothy R. Powell, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE– Attorneys for appellee BYJU's Alpha, Inc.

George W. Hicks, Jr., KIRKLAND & ELLIS LLP, Washington, DC; Seth M. Cohen, KIRKLAND & ELLIS LLP, San Fracisco, CA; Patrick J. Nash, Jr., KIRKLAND & ELLIS LLP, Chicago, IL; Brian Schartz, KIRKLAND & ELLIS LLP, New York, NY; Laura Davis Jones, Peter J. Keane, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE—Attorneys for appellee GLAS Trust Company LLC.

July 18, 2024
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is the Motion for Stay Pending Appeal (D.I. 5) ("the Stay Motion") filed by appellants Camshaft Capital Fund, LP, Camshaft Capital Advisors, LLC, Camshaft Capital Management, LLC (collectively, "the Camshaft Defendants") and William C. Morton ("Mr. Morton," and, together with the Camshaft Defendants, "the Movants") with respect to the Bankruptcy Court's (i) March 14, 2024 Order on Finding of Contempt (Adv. D.I. 80)[1] ("the Contempt Order"), and (ii) March 18, 2024 Order Granting Debtor's Motion for a Preliminary Injunction (Adv. D.I. 84) ("the PI Order").  The two orders that Movants seek to stay ("the Orders") are addressed in the Bankruptcy Court's Memorandum Opinion, dated April 3, 2024, *In re BYJU's Alpha, Inc.*, 2024 WL 1455586 (Bankr. D. Del. Apr. 3, 2024) ("the Memorandum Opinion").[2]  The Court has considered the motion, the opposition (D.I. 13) filed by appellees BYJU's Alpha, Inc. ("the Debtor") and GLAS Trust Company LLS ("GLAS," and, together with the Debtor, "the Appellees") and the Movants' reply in further support of the Stay Motion (D.I. 17).  For the reasons set forth below, the Court will deny the Stay Motion.

---

[1]    The docket of the Chapter 11 case, captioned *In re BJYU's Alpha, Inc.*, Case No. 24-10140 (JTD) (Bankr. D. Del.) is cited herein as "Bankr. D.I. __," and the docket of the adversary proceeding, captioned *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP, et al.,* Adv. No. 24-50013 (JTD), is cited herein as "Adv. D.I. __."

[2]    The Movants have filed a separate notice of appeal with respect to the Memorandum Opinion "to the extent it functions as an order which alters or supplants, rather than supplements or clarifies, that certain Order on Finding of Contempt ("Contempt Order") entered on March 14, 2024 as Adv. D.I. 80, and does not otherwise comport with Rule 8003-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware."  *See BYJU's Alpha Inc. v. Camshaft Capital Fund, LP, et al.,* Civ. No. 24-492-MN, D.I. 1.

I.      **BACKGROUND**

     A.      **The Debtor and the Alpha Funds**

The following facts appear to be undisputed. The Debtor is a special purpose vehicle formed by an indirect subsidiary of Think and Learn Private Limited ("T&L"), an Indian corporation. *See In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *1. T&L is a family-run business, and its three-member board consists of founder Byju Ravindran, his younger brother Riju Ravindran ("Mr. Ravindran"), and Byju's wife, Divya Gokulnath. At all times relevant to this dispute, Mr. Ravindran served as the sole director of the Debtor. *Id*.

"Movants" effectively refers only to Mr. Morton, as the founder, CEO, and seemingly only employee of Camshaft.[3] Certain facts bring Camshaft's legitimacy into question.[4]

In November 2021, the Debtor – with T&L and its affiliates serving as guarantors – borrowed $1.2 billion from certain lenders ("the Lenders") with GLAS serving as the Lenders' agent. *Id*. There are three alleged transfers at the center of this dispute.

First, in late April 2022, the Debtor alleges that Mr. Ravindran and T&L caused the Debtor to transfer more than $533 million ("Alpha Funds") to Camshaft, ostensibly in exchange for a limited partnership interest in Camshaft Capital Fund, LP ("Camshaft LP Interest"). The Debtor asserts it has received no return from the purported investment in Camshaft.

---

[3]    *See In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *2 ("The Debtor alleges that Camshaft has no working telephone and publicly misrepresents its management team to include individuals who are unaware that they are being held out in such capacity. The evidence suggests that Mr. Morton is actually Camshaft's sole employee.").

[4]    For example, the address for Camshaft's principal place of business, supplied by Camshaft to the SEC, is actually the address of an IHOP located in Miami, Florida. Camshaft eventually provided an additional address, which points to a sparsely furnished room that shows no sign of regular activity. *In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *2.

Second, in March 2023, the Debtor alleges that Movants facilitated Mr. Ravindran's and T&L's transfer of the Debtor's Camshaft LP Interest to another T&L subsidiary controlled by Mr. Ravindran – Inspilearn LLC ("Inspilearn"). (D.I. 13–2, Ex. 1 at 5). The Camshaft LP Interest – valued then by Movants at almost $540 million (*id.*) – was the Debtor's property, but the Debtor alleges that it received nothing in the Inspilearn transfer. (D.I. 13–2, Ex. 2 ("3/14/24 Tr.") at 24:21–25:6, 56:10–15).

By October of 2023, following four defaults on the covenants under the credit agreement between the Debtor, its affiliates, and the Lenders, GLAS accelerated the loans and replaced Mr. Ravindran with Timothy Pohl to serve as the Debtor's sole director and officer.[5] On February 1, 2024, the Debtor filed for chapter 11 protection. The very same day, Inspilearn transferred the Camshaft LP Interest to an offshore trust, presumably to move the funds away from U.S. jurisdiction. (D.I. 13–2, Ex. 1 at 4). This is the third alleged fraudulent transfer.

On February 2, 2024, the Debtor initiated the adversary proceeding asserting fraudulent transfer claims against the Camshaft Defendants and seeking to recover the Alpha Funds – almost certainly the single largest asset of the Debtor's estate. (*See* Adv. D.I. 40 ("Amended Compl.") ¶¶ 45–53). There appears to be no dispute that the funds were transferred from the Debtor to Camshaft. Camshaft and its director, Mr. Morton, have refused to identify the offshore trust to which the Camshaft LP Interest was transferred, despite the various Bankruptcy Court orders outlined below.

---

[5]     Subsequent litigation in the Delaware Court of Chancery affirmed Pohl's appointment. *See* Final Order and Judgment, *Glas Trust Co. LLC v. Ravindran*, C.A. No. 2023-0488 (Del. Ch. 2023).

B.    **The Prior Orders**

On February 5, 2024, the Bankruptcy Court held a hearing to consider certain first day motions during which the court directed Camshaft to confer with the Debtor to locate the Alpha Funds.  (D.I. 13–2, Ex. 3 ("2/5/24 Tr.") at 51:10–12.).  Camshaft refused to confer.

On February 16, 2024, the Bankruptcy Court issued an order granting the Debtor's motion for expedited discovery, which required Camshaft to respond to the Debtor's interrogatories and provide discovery regarding the Alpha Funds.  (Adv. D.I. 22 at 2).  Camshaft responded but with an "attorneys' eyes only" designation.  Camshaft eventually agreed to remove the "attorneys' eyes only" designations from its responses.  Although Camshaft disclosed, for the first time, that it facilitated transferring the Alpha Funds overseas to a "non–US Trust" on the Petition Date, Camshaft refused to identify the "non–US Trust."  (D.I. 13–2, Ex. 1 at 4).

On February 27, 2024, the Bankruptcy Court held a conference to address Camshaft's deficient discovery responses and instructed Camshaft to make "full disclosure by Friday [March 1]."  (*See* D.I. 13–2, Ex. 4 ("2/27/24 Tr.") at 11:5–7).  Camshaft refused and moved for a protective order, seeking a ruling that it was not required to respond to the outstanding discovery on relevance grounds.  (Adv. D.I. 28).

At a hearing on March 1, 2024, the Bankruptcy Court denied the motion for protective order and ordered Camshaft to provide the requested discovery by the end of that day ("the March 1 Order").  (D.I. 13–2, Ex. 5 ("3/1/24 Tr.") at 25:2–10).  To ensure Camshaft's compliance, the Bankruptcy Court set a status conference for Monday, March 4, 2024.  (*Id.*).  The Bankruptcy Court warned that, "[a]s part of that status conference," it "will consider whether or not [it is] going to issue a notice to show cause" if Camshaft failed to provide discovery.  (*Id.* at 25:7–10).  It also requested Mr. Morton's in–person appearance for the conference:

> COURT: I would request that [Mr. Morton] be in the courtroom for
> that hearing . . . I think it will be very important for him to be here.
> I think he needs to hear it from me directly.
>
> COUNSEL: Understood, Your Honor. Thank you.

(*Id*. at 25:11–21).  Camshaft failed to comply with the March 1 Order.

An hour before the March 4, 2024 status conference, Camshaft's counsel emailed the Bankruptcy Court advising that Mr. Morton "is in transit to Dubai" and therefore would not attend the conference in-person despite the Bankruptcy Court's request.  (D.I. 5, Ex. B at 1).  At the status conference, counsel to Camshaft explained, "As to the question of the documents, as officers of the Court, we advised Mr. Morton that he should produce the documents, he should produce the information, he declined.  That is where we are today."  (D.I. 13–2, Ex. 6 ("3/4/24 Tr.") at 4:15–18).  Counsel continued, "[M]y client is not here today.  I understood Your Honor's [request] that he appear.  He is overseas and was not able to make it.  He was actually on his way by the time Your Honor's order came out."  (*Id*. at 3).

C.   **The Show Cause Order**

Thereafter, the Bankruptcy Court determined to hold a hearing for Movants to show cause why they should not be held in contempt for violating the March 1 Order and issued the Show Cause Order (Adv. D.I. 56) to be heard in conjunction with the Debtor's previously filed motion for injunctive relief, which sought an order prohibiting the transfer or use of the Alpha Funds. (Adv. D.I. 41).  The Bankruptcy Cout advised:

> I want to make it absolutely clear to Mr. Morton that one of the
> possible remedies[ ] I am going to impose for the contempt is civil
> confinement if he doesn't comply with the order[,  a]nd I want to
> give him every opportunity to be heard on that before I impose that
> penalty.

(3/4/24 Tr. at 13).  Camshaft's counsel requested that the show cause hearing be scheduled after March 6, 2024 to comply with due process.  (*Id*. at 11:20–24).  The Bankruptcy Court agreed and

ordered Mr. Morton to "appear in person" for a show cause hearing on March 14, 2024.  (Adv. D.I. 56).  The Bankruptcy Court reiterated that it would "consider all possible sanctions against Camshaft and Mr. Morton, including placing Mr. Morton in civil confinement until he purges himself of such contempt."  (*Id.*).

### D.    <u>The Contempt Order</u>

At 3:54 p.m. on the eve of the show cause hearing, Judge Dorsey's chambers received an email from Camshaft's counsel indicating that Mr. Morton "cannot attend in person" because he had "recently been hospitalized and thus remains overseas," but that he wished to appear at the show cause hearing remotely via Zoom.  Consistent with the Federal Rules of Civil Procedure, and Judge Dorsey's chambers' procedures which allow witnesses to testify remotely upon showing of good cause,[6] the Bankruptcy Court responded to the email and informed Camshaft's counsel that in order to evaluate Mr. Morton's request, it would need (1) some proof that he had actually been hospitalized, (2) clarification as to whether he intended to have his own counsel appear at the show cause hearing, and (3) clarification as to whether he intended to comply with the order to produce the requested discovery.  Thirty minutes before the start of the show cause hearing, the Bankruptcy Court received a response from Camshaft's counsel, informing the Court that (1) Mr. Morton had been discharged without providing any proof of his hospitalization, (2) Mr. Morton's separate counsel would not appear at the show cause hearing, and (3) Mr. Morton did not intend to comply. (3/14/24 Tr. at 5:4–6 ("Camshaft's counsel advised me that Mr. Morton was allegedly now released from the hospital, but . . . provided no proof")).

---

[6]    *See* Chambers Procedures for Judge John T. Dorsey (revised Jan. 11, 2024), https://www.deb.uscourts.gov/judge-john-t-dorsey ("The remote attendance of live witnesses is permitted only upon a showing of good cause and in compelling circumstances.  *See* Fed. R. Civ. P. 43(a)."); Fed. R. Civ. P. 43(a) ("For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.").

At the March 14, 2024 hearing, Movants did not present any evidence or argument to justify their refusal to comply with the prior orders or to show that they would be unable to pay fines. Movants simply identified Camshaft's interrogatory response: Mr. Morton said he did not have the Alpha Funds. (*Id*. at 7:18–22). The Bankruptcy Court declined to credit Mr. Morton's statement given his "absolute contempt for the court." (*Id.* at 7:23–8:2). The Bankruptcy Court further found that "Camshaft's brazen insistence on concealing the location and control of [the Alpha Funds] strongly indicates that it retains some ownership and control over it" – controverting Mr. Morton's unsubstantiated statement that he lacked access to the Alpha Funds. *In re BJYU's Alpha, Inc.,* 2024 WL 1455586, at *10.

Having concluded that Movants' conduct satisfied the standard for contempt, *id*. at *4, the Bankruptcy Court issued a bench ruling holding both Camshaft and Mr. Morton in contempt. The Contempt Order imposed a daily fine of $10,000 on each of Camshaft and Mr. Morton until "Camshaft produces the information it was ordered to produce at the hearing on March 1, 2024," and ordered Mr. Morton's confinement.[7] *Id.* at *4, n.38 (explaining Contempt Order). Because Mr. Morton remained at large, the Bankruptcy Court held "a chambers conference with the U.S. Marshals, debtor's counsel, the U.S. Trustee's counsel" to discuss "Mr. Morton and whatever information the debtor[] had about Mr. Morton and how to locate him." (3/14/24 Tr. at 7:7–11).

The Bankruptcy Court also addressed Camshaft's only due process objection – that the Contempt Order was entered without Mr. Morton's presence – explaining that Mr. Morton had received more than sufficient process given his failure to appear or "provide an adequate excuse

---

[7]     *See* Contempt Order at 4, ¶ 3 ("The Court will issue a separate bench warrant for civil confinement. Mr. Morton may secure his release upon compliance with the March 1 Order"). *See also* Civil Contempt Bench Warrant (internal notation only at Adv. D.I. 81) and Writ of Bodily Attachment and Order of Civil Commitment for Contempt for William Cameron Morton (internal notation only Adv. D.I. 85).

for why he could not be here." (*Id*. at 8:6–12).  Camshaft's counsel made no further objection. (*Id.* at 8:13).

### E.      The PI Order

Following the issuance of the contempt documents, the Bankruptcy Court reconvened the hearing and heard argument and evidence on the Debtor's motion for injunctive relief.  Camshaft did not present any witnesses or evidence, nor did Camshaft examine any witnesses offered by the Debtor and Mr. Ravindran.  Mr. Ravindran testified at the hearing remotely after he explained his overseas presence to the Bankruptcy Court, and the Bankruptcy Court found good cause.  (*Id*. at 14:1–15:11).  Camshaft chose to only "make two quick points" (*id*. 153:25–154:1), to which both the Debtor and GLAS responded.  (*Id*. at 164:8–168:4).  Having found that the Debtor was likely to succeed on its claims and that it would suffer irreparable harm absent preliminary injunctive relief, the Bankruptcy Court granted that motion and issued "a freeze injunction preventing the transfer of the funds or the use of the funds, wherever they might be located, . . . includ[ing] Mr. Byju Ravindran and [Divya Gokulnath]."  (*Id*. at 171:8–14; 180–81).

The Bankruptcy Court subsequently entered the PI Order (Adv. D.I. 82, 84) memorializing its ruling, and later issued its Memorandum Opinion further explaining its ruling.  *In re BYJU's Alpha, Inc.,* 2024 WL 1455586, at *5–*11.

### F.      The Order Denying Movant's Stay Motion

On March 19, 2024, Camshaft appealed the Contempt Order and the PI Order.  On March 27, 2024, Movants moved for a stay pending appeal in the Bankruptcy Court.

On April 9, 2024, the Bankruptcy Court denied Movants' stay motion, ruling that Movants had failed to demonstrate any likelihood of success on appeal and irreparable harm absent the stay. (D.I. 13–2, Ex. 7 ("4/9/24 Tr.") at 49:2–9).  In particular, the Bankruptcy Court found that Mr. Morton "is not likely to suffer irreparable harm by the continued imposition of the [contempt]

order" because "[c]ompliance with the [discovery] order would purge the contempt." (*Id.* at 49:10–14). The Bankruptcy Court further found that the fines are "subject to reversal" if Movants prevail on appeal, and thus would not cause irreparable harm. (*Id.* at 49:15–17).

The Bankruptcy Court further ruled that Movants' appeal of the Contempt Order is unlikely to succeed because Mr. Morton "was afforded certainly meaningful opportunity and notice of the relief that the Court would be considering at the hearing that it held and, likewise, that he had a full and fair opportunity to participate." (*Id.* at 50:2–8). The Bankruptcy Court rejected the Movants' disparate–treatment argument regarding Mr. Ravindran having been permitted to testify remotely. (*Id.* at 50:9–51:8). The Bankruptcy Court stated that, unlike Mr. Ravindran, Mr. Morton failed to justify the "extraordinary relief" of remote appearance under Rule 43 of the Federal Rules of Civil Procedure. (*Id.* at 50:15–51:8). The Bankruptcy Court also concluded that Camshaft is unlikely to succeed on the appeal of the PI Order and would suffer no irreparable harm absent a stay. (*Id.* at 51:9–21). In particular, it questioned Camshaft's alleged harm given that Camshaft cannot violate the PI Order if – as it claims (*id.* at 11:18–23) – it does not have the Alpha Funds.

On April 15, 2024, Movants filed the Stay Motion, which is fully briefed. (D.I. 5, 13, 17.)

## II.   <u>JURISDICTION AND STANDARD OF REVIEW</u>

The single notice of appeal, filed by the Camshaft Defendants on or around March 20, 2024, lists both the Contempt Order and the PI Order. (D.I. 1). An "Amended Notice of Appeal," adding non–party Mr. Morton as an appellant, was filed on March 28, 2024. (D.I. 3). The parties dispute whether the Contempt Order and PI Order are final, appealable orders such that this Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a) to consider the relief sought in the Stay Motion.

### A.      The Contempt Order Is Appealable

With respect to the Contempt Order, the right of a non–party, such as Mr. Morton, to immediately appeal such an order is well established and not disputed by Appellees.  *See, e.g.,* *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988); *E. End Taxi Servs., Inc. v. Virgin Islands Taxi Ass'n, Inc.*, 411 F. App'x 495, 499 (3d Cir. 2011).  This jurisdictional basis is sufficient for the Court to consider the relief requested in the Stay Motion.  As Movants concede (D.I. 5 at 11), the Contempt Order is reviewed for abuse of discretion.  *See Victory v. Berks Cnty.*, 789 F. App'x 328, 333 (3d Cir. 2019).

### B.      The PI Order Is Appealable

With respect to the PI Order, Appellees take the position that Camshaft "has no right to appeal the PI Order, which is not a 'final judgment[], order[], [or] decree[].'" (D.I. 13 at 17 n.6 (quoting 28 U.S.C. § 158(a))).  It is true that the plain language of § 158(a) "persuasively suggest[s] that all interlocutory orders, including injunctions, may only be appealed with leave of court." *First Owners' Ass'n of Forty Six Hundred v. Gordon Properties, LLC*, 470 B.R. 364, 372 (E.D. Va. 2012); *see also* 16 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 3926.1 (3d ed. 2017) ("There is no provision for appeal as of right from an injunction order of a bankruptcy judge to the district court.").  Here, there is no motion for leave pending.  The PI Order is not otherwise final, under the Third Circuit's flexible, pragmatic approach to finality of bankruptcy court orders, as the PI Order does not dispose of a "discrete unit of litigation decided on its merits" within the larger context of the bankruptcy case or "completely resolve all of the issues pertaining to a discrete claim, including issues as to proper relief."[8]  1 COLLIER ON BANKRUPTCY ¶ 5.08[1][b] (16th ed.).

---

[8]      The PI Order prohibited further use or transfer of the Alpha Funds and directed Mr. Ravindran to "take all necessary steps to determine the location, amount, and composition of the [Transferred] Funds," and file a certification that such information has been disclosed to the Debtor and GLAS.  (Adv. D.I. 84).  Although the PI Order was a

Movants cite *In re World Imports Ltd.*, 820 F.3d 576, 582 n.5 (3d Cir. 2016), a case in which the Third Circuit noted that the district court had jurisdiction over an appeal from a bankruptcy court order granting injunctive relief. (D.I. 17 at 7).[9]  Although courts are split on the issue,[10] courts in

---

pivotal first step in protecting the Debtor's assets from misappropriation, it did not adjudicate any issues with respect to estate assets and left additional work to be done by the Bankruptcy Court.  Indeed, as reflected on the docket of the adversary proceeding, subsequent motions and declarations have been filed regarding Mr. Ravindran's lack of compliance with the PI Order.  (*See, e.g.,* Adv. D.I. 109, 110, 114, 184, 202).  The Debtor eventually filed a motion requesting that the Bankruptcy Court hold Mr. Ravindran in contempt for his failure to comply with the PI Order.  (Adv. D.I. 105 (sealed); Adv. D.I. 109 (redacted)).  Following briefing on that motion (Adv. D.I. 187, 189, 202), the Bankruptcy Court held a hearing on May 21, 2024 to consider the relief requested.  (Adv. D.I. 206).  On May 28, 2024, the Bankruptcy Court issued an order finding Mr. Ravindran in contempt of the PI Order for the reasons set forth on the record at the May 21, 2024 hearing.  (Adv. D.I. 204 (further holding that: "Mr. Ravindran is precluded from asserting in this Adversary Proceeding that the Alpha Funds . . . were transferred from the Debtor to Camshaft Capital Fund LP and, subsequently, from Camshaft Capital Fund LP to Inspilearn LLC, for a proper purpose.")  That order has also been appealed.  *See* Civ. No. 24-642-MN D.I. 1.  The Bankruptcy Court further ordered the Debtor and Mr. Ravindran to submit limited briefing as to whether the financial penalty should be a fine paid to the Bankruptcy Court or the costs to the debtor and GLAS of having to bring the motion.  Briefing on that issue was completed on May 30, 2024.  (Adv. D.I. 221, 222).  An objection to any further sanctions was filed by Mr. Ravindran on July 8, 2024.  (Adv. D.I. 274).  A determination of appropriate sanctions for Mr. Ravindran's contempt of the PI Order was originally scheduled for June 20, 2024, but later rescheduled for a hearing to be held on July 24, 2024.  (*See* Adv. D.I. 204 ¶¶ 3-4; Adv. D.I. 272; Adv. D.I. 273).

[9]      *In re World Imports* did not apply the Third Circuit's flexible, pragmatic approach to finality but rather explained that "Pursuant to 28 U.S.C. §§ 158(a) and 1292(a), the District Court had jurisdiction over the appeal from the Bankruptcy Court's order granting injunctive relief."  *In re World Imports Ltd.*, 820 F.3d at 582.  The preliminary injunction on appeal in that case was an order requiring the immediate turnover of goods.  *Id.* at 581 (explaining that the bankruptcy court ordered "immediate delivery and possession of the Current Goods . . ." pursuant to § 542 of the Bankruptcy Code).  Turnover orders are widely recognized as final orders in the bankruptcy context.  *See, e.g., In re Prof'l Ins. Mgmt.*, 285 F.3d 268, 280-81 (3d Cir. 2002).

[10]     *See, e.g., Quigley Co., Inc. v. Coleman (In re Quigley Co., Inc.),* 323 B.R. 70, 72 (S.D.N.Y. 2005) (holding preliminary injunction is interlocutory and not appealable without the requisite showing that leave to appeal is appropriate); *Carter v. Travelers Indem. Co. (In re Johns-Manville Corp.),* 2004 WL 385118, at *1 (S.D.N.Y. Mar. 2, 2004) ("[w]here a

the Third Circuit appear to agree that an order granting a preliminary injunction may be appealed as of right and reviewed by the district court, notwithstanding that the order is interlocutory, pursuant to 28 U.S.C. §§ 158(a), (c)(2), and 1292(a)(1).[11]   *See, e.g., In re World Imports Ltd.,* 820 F.3d at 582; *In re Midstate Mortg. Inv'rs Grp., L.P.,* 2006 WL 3308585, at *4 (D.N.J. 2006); *Prof'l Ins. Mgmt. v. The Ohio Casualty Gr. of Ins.,* 246 B.R. 47, 59 (D.N.J. 2000), *vacated and remanded on other grounds sub nom. In re Prof'l Ins. Mgmt.,* 285 F.3d 268, 281 n.16 (3d Cir. 2002) (agreeing that "the District Court, sitting as an appellate court, was authorized to hear the appeal from the Bankruptcy Court as an appealable injunctive order under 28 U.S.C. § 1292(a)"). In light of the injunctive nature of the PI Order, and in accordance with prevailing case law in this circuit, the Court has jurisdiction to consider the appeal of the PI Order and, accordingly, the relief requested in the Stay Motion.  As Movants concede (D.I. 5 at 15), the PI Order is reviewed for abuse of discretion.  *See In re Philadelphia Newspapers, LLC,* 407 B.R. 606, 610 (E.D. Pa. 2009) (citing *In re Pillowtex, Inc.,* 304 F.3d 246, 250 (3d Cir. 2002)).

## III.   ANALYSIS

"The granting of a motion for stay pending appeal is discretionary with the court."  *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2–3 (Bankr. D. Del. Mar. 27, 2001).  A stay pending appeal is an "extraordinary remedy."  *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del.

---

bankruptcy court issues a preliminary injunction and contemplates a further hearing on the merits of a permanent injunction, the preliminary injunction cannot be appealed").

[11]   28 U.S.C. § 158(a) provides that a district court has jurisdiction to hear appeals (1) "from final judgments, orders, and decrees" and (2) "with leave of the court, from other interlocutory orders and decrees."  28 U.S.C. § 158(c)(2) provides that appeals under § 158(a) are taken "in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts."  28 U.S.C. § 1292(a)(1) provides that courts of appeals have jurisdiction to hear appeals of "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions."

2012) (quoting *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)).  The movant bears the burden of establishing that imposition of a stay is warranted.  In determining whether the moving party met its burden, courts in the Third Circuit consider the following factors:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc*., 802 F.3d 558, 568 (3d Cir. 2015) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)).  The Third Circuit has "provide[d] guidance on how to conduct a balancing of the four stay factors" and adopted a "sliding–scale approach" to balancing the factors.  *Id.* at 567–69.  "'[T]he most critical' factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm."  *Id*. at 568 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

With respect to the first factor – a strong showing of the likelihood of success – the *Revel AC* court noted, "a sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability of winning.  Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not."  *Id.* at 568–69 (internal quotations and citations omitted).  "On the second factor the applicant must demonstrate that irreparable injury is *likely* [not merely possible] in the absence of a stay."  *Id*. at 569 (internal quotations and citations omitted) (emphasis in original).  "While a reference to 'likelihood' of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm we understand the Supreme Court's use of 'likely' to mean more apt to occur than not."  *Id.* (citations omitted).

Under the "sliding scale" approach, "the necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors. Stated another way, the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in its favor; the less likely it is to win, the more need it weigh in its favor." *Id.* (internal citations omitted). "Keeping in mind that the first two factors are the most critical, if the chance of success on the merits is only better than negligible and the possibility of irreparable injury is low, a stay movant's request fails." *Id.* at 570 (internal quotations and citations omitted). "Likewise, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the stay opponent if a stay is granted, it is still required to show, at a minimum, serious questions going to the merits." *Id.* (internal quotation marks and citations omitted).

Because all four factors are interconnected, the Third Circuit has instructed that the analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) ***and*** (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id*. at 571 (internal quotations and citation omitted) (emphasis in original).

A.    <u>Likelihood of Success on the Merits</u>

With respect to the first factor – a strong showing of the likelihood of success – Movants were required to show "a sufficient degree of success for a strong showing exists if there is a reasonable chance, or probability of winning." *In re Revel AC*, 802 F.3d at 568–69.

As the Bankruptcy Court correctly explained:

> Section 105 of the Bankruptcy Code allows a bankruptcy court to "issue any order, process, or judgment that is necessary or

14

> appropriate to carry out the provisions of this title."  11 U.S.C.
> § 105(a). "Section 105(a) gives the court general equitable powers,
> but only insofar as those powers are applied in a manner consistent
> with the Code." *In re Morristown & Erie R. Co*, 885 F.2d 98, 100
> (3d Cir. 1989).  This equitable authority created by Section 105
> gives a bankruptcy court the power to hold parties in civil contempt.
> *See, e.g.*, *In re Vaso Active Pharms, Inc.*, 514 B.R. 416, 421–22
> (Bankr. D. Del. 2014); *In re Baker*, 390 B.R. 524, 531 (Bankr. D.
> Del. 2008); *In re Anderson*, 348 B.R. 652, 661 (Bankr. D. Del.
> 2006).

*In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *4.  "A plaintiff must prove three elements by clear and convincing evidence to establish that a party is liable for civil contempt: (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order."  *In re Vaso Active Pharms.,* 514 B.R. at 422.  The "clear and convincing" standard requires that any ambiguity be resolved in favor of the party charged with contempt.  *U.S. on Behalf of I.R.S. v. Norton*, 717 F.2d 767, 774 (3d Cir. 1983).  A court also must give fair warning that certain acts are forbidden before holding a party in civil contempt.  *Id.*

### 1.   The Contempt Order

Movants' appeal of the Contempt Order rests solely on due process grounds and is unlikely to succeed to the merits.  (D.I. 5 at 11–14).  As an initial matter, requiring Mr. Morton to provide in–person testimony did not violate due process.  Rather, the ruling was well within the Bankruptcy Court's broad discretion as Movants failed to overcome the strong presumption of in–person testimony under Rule 43(a).  (4/9/24 Tr. at 50:15–18 (remote testimony is "essentially extraordinary relief")).  Indeed, "live testimony in open court is a deeply entrenched default that will only be excused when three factors are met—good cause, compelling circumstances, and appropriate safeguards."  *J.D. v. Price*, 619 F. Supp. 3d 523, 526 (W.D. Pa. 2022).  Movants established none.  Movants merely asserted Mr. Morton's unsubstantiated hospitalization overseas.  In response to the Bankruptcy Court's request for some form of proof, Mr. Morton

provided nothing.  (*Id.* at 51:4–8 ("there was no meaningful response to the Court's inquiry with respect to the veracity or the foundation of the contention that Mr. Morton was unable to travel or otherwise unable to participate directly with the hearing")).  The Bankruptcy Court was well within its discretion to decline to permit Mr. Morton to testify remotely without any substantiation of his alleged hospitalization.  *See, e.g.*, *Valerino v. Holder*, 2014 WL 4198501, *2 (D.V.I. Aug. 22, 2014) (disallowing remote testimony because party did not "provide any factual basis" to satisfy Rule 43's "stringent requirement").

Movants further argue that the Bankruptcy Court violated due process by refusing to allow Mr. Morton to testify remotely.  (D.I. 5 at 11–13).  This argument ignores the other opportunities that the Bankruptcy Court gave Mr. Morton to be heard, none of which he utilized.  A party "cannot bypass or refuse to participate in [due process procedures] actually provided and subsequently challenge their unavailability." *Hayes v. Cape Henlopen Sch. Dist.*, 341 F. Supp. 823, 835 (D. Del. 1972); *see Sec'y U.S. Dep't of Labor v. Koresko*, 726 F. App'x 127, 133 (3d Cir. 2018) (party who "received adequate notice" of the contempt hearing yet "chose not to attend [the contempt hearing]" or "object in writing" cannot subsequently assert due process challenge).  As Appellees correctly point out, the Bankruptcy Court requested that Mr. Morton attend the March 4, 2024 conference to explain his violation of the March 1 Order, but Mr. Morton refused to appear.  The Bankruptcy Court provided Mr. Morton another opportunity to be heard at the March 14 show cause hearing, giving advance notice that Mr. Morton must appear in person, and postponing the hearing as requested by counsel.  Mr. Morton failed to appear in person as ordered.  In light of the foregoing, Movants' due process challenge is unlikely to succeed on the merits.

Movants further challenge the Contempt Order on the basis that the Bankruptcy Court did not hold an evidentiary hearing.  (D.I. 5 at 24).  This argument is unlikely to succeed.  First, the

show cause hearing *was* the evidentiary hearing.  Mr. Morton failed to appear despite being ordered to do so, offered no credible reason for his absence, and Movants chose not to present any evidence to carry their burden "to show that [they had] made 'in good faith all reasonable efforts to comply'" with the Bankruptcy Court's orders.  *Harris v. City of Philadelphia*, 47 F.3d 1311, 1324 (3d Cir. 1995).  The Bankruptcy Court thus proceeded to render a decision based on the evidence before it.  The cases cited by Movants (D.I. 5 ¶¶ 20, 24) do not support their likelihood of success on appeal.  Second, Movants were "given ample notice and an opportunity to respond, and [they] fail[ed] to present any arguments creating any material issue of fact."  *In re Linerboard Antitrust Litig.*, 2010 WL 3928638, *4 (E.D. Pa. Oct. 5, 2010).

Movants assert that the Bankruptcy Court abused its discretion in allowing Mr. Ravindran to testify remotely but denying Mr. Morton the same accommodation.  (*See* D.I. 5 at 12–13).  Movants are unlikely to succeed on their disparate treatment argument, as it is irrelevant that the Bankruptcy Court permitted Mr. Ravindran to testify remotely.  Mr. Ravindran was not ordered to attend a show cause hearing "in person," and the Bankruptcy Court has discretion to conclude that one witness has satisfied the standard to testify remotely, and another has not.

Movants are not likely to succeed on the argument that the Bankruptcy Court abused its discretion by imposing the fines.  (*See* D.I. 5 at 13–14).  As Appellees correctly argue, Movants "bear[] the burden of producing evidence of [their financial] inability to comply with the sanctions order."  *Egnotovich v. Greenfield Twp. Sewer Auth.*, 378 F. App'x 121, 123–24 (3d Cir. 2010).  Movants produced none.  Thus, this case is distinguishable from the case cited by Movants, *Perez v. Weir*, 2015 WL 4545276 (W.D. Pa. July 28, 2015), where the contemnor submitted uncontested evidence showing "he has no substantial assets and extraordinary liabilities."  *Id.* at *3 n.4.

Finally, this Court agrees that Movants' continued violation of several orders negates Movants' argument that the Bankruptcy Court should have considered a less intrusive sanction. Here, the Bankruptcy Court concluded, after considering other sanctions, that under the circumstances here "both monetary sanctions and civil confinement are the least coercive sanctions available." *In re BYJU's Alpha, Inc.*, 2024 WL 1455586 at *9 n.37; *see Chadwick v. Janecka*, 312 F.3d 597, 608 (3d Cir. 2002) (permissible to hold contemnor in confinement until compliance with underlying order). Among other things the Bankruptcy Court considered "Camshaft's and Mr. Morton's steadfast insistence that they need not follow this Court's orders, as well as the time sensitive nature of this matter" and "concluded that it would be both futile and a waste of resources to issue an order for monetary sanctions alone before ordering Mr. Morton's confinement." *In re BYJU's Alpha, Inc.*, 2024 WL 1455586 at *9 n.37. These are rational bases for the sanctions imposed and reflect no abuse of discretion.

### 2.     The PI Order

As the Bankruptcy Court further explained, to warrant a preliminary injunction, the movant must show:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*In re BYJU's Alpha, Inc.,* 2024 WL 1455586, at *8 (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017)). "Only the first two factors are necessary. 'If these gateway factors are met, a court then considers the remaining two factors and determines its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.'" *In re Teams Sys.*, 2023 WL 1428572, at *10 (quoting *Reilly*, 858 F.3d at 179).

18

Camshaft argues that the Debtor failed to establish a likelihood of success on the merits and thus issuance of the PI Order constituted an abuse of discretion.  (D.I. 5 at 16–19).  Camshaft's briefs do little to address the evidence and testimony presented by the Debtor.  Camshaft primarily faults the Bankruptcy Court for "ignoring Camshaft's defenses or not considering them adequately." (*Id.* at 17).  The record reflects, however, that the Bankruptcy Court considered those defenses and concluded that the Debtor had made the requisite showing.  *In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *8–*11.

Movants complain that the Bankruptcy Court dismissed Camshaft's "mere conduit" defense to fraudulent transfer by stating that Camshaft's possession of information regarding the Alpha Funds meant that Camshaft had "dominion and control" over those funds.  The fact that Camshaft had knowledge about the location of the Alpha Funds, it argues, does not equate to "dominion and control." (D.I. 5 at 17).  Rather, Camshaft is a "financial institution," it argues, which courts have repeatedly held "are mere conduits because, as in this case, the client retains control of such funds." (*Id.* at 17–18).  The Bankruptcy Court was not persuaded that Camshaft was a "financial institution" akin to a bank, and the record available at the hearing on the PI Order does not appear to support the contention.  *See In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *2 (addressing Camshaft's alleged place of business and management team).  Camshaft's investment brochure stated that Camshaft is "solely responsible" for investing the Alpha Funds, and unlike an account balance, the Debtor cannot transfer the Camshaft LP Interest "without [] prior written consent from" Camshaft.  (D.I. 13, Ex. 8 at 11, 9).  Notwithstanding, "Camshaft repeatedly objected to providing any information about subsequent transfers of the disputed funds to third parties.  Camshaft's refusal to provide this information suggests that it has information about subsequent transfers of the disputed funds." *In re BYJU's Alpha, Inc.*, 2024 WL 1455586, at *9.

The Bankruptcy Court found that Camshaft's refusal to locate the Alpha Funds further indicates that it may continue to control the Alpha Funds.  *Id.* at *10.  These are rational bases for concluding that Camshaft's "mere conduit" defense may not succeed.

Movants further assert that Bankruptcy Court disregarded facts supporting Camshaft's defense that the Debtor received reasonably equivalent value in exchange for its transfer of $533 million to the Camshaft Fund.  (*Id*. at 18).  That defense, however, is irrelevant to the Debtor's likelihood of success on its actual fraudulent transfer claim.  To prove actual fraudulent transfer, the plaintiff must show that the disputed transfer was made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted."  11 U.S.C. § 548(a)(1)(A).  In concluding that the Debtor is reasonably likely to succeed on its claim for actual fraudulent transfer, the Bankruptcy Court noted Mr. Ravindran's testimony, in which he consistently feigned ignorance as to the reasons behind the Camshaft transfer, despite acknowledging that he served on the board of directors that authorized the transaction from the Debtor to Camshaft.  (3/14/24 Tr. at 42–43).  Although Mr. Ravindran testified to being the sole director of the Debtor at the time of the transfer, he claimed to have no idea why his company had decided to make $533 million in "investments" to Camshaft.  (*Id*.).  "The Defendants have not presented a single piece of evidence to suggest that the Camshaft transfers were made for any reason other than defrauding the Debtor's creditors."  *In re BYJU's Alpha, Inc*., 2024 WL 1455586, at *9.  "I find that the Debtor is reasonably likely to succeed on its claim for actual fraudulent transfer."  *Id.*

Notwithstanding, the Movants argue that the receipt of such value bars a claim for constructive fraudulent transfer.  A transfer is constructively fraudulent if the debtor (1) receives less than reasonably equivalent value for the transaction and (2) was insolvent on the date of the

transfer.  11 U.S.C. § 548(a)(1)(B).  As the Bankruptcy Court observed, "There is no dispute that the Debtor was insolvent when it transferred its funds to Camshaft, and there has been no evidence presented to suggest that an ownership interest in Camshaft was worth anything remotely close to $533 million."  *Id*.  Notwithstanding, Movants argue that the Bankruptcy Court ignored "undisputed facts" showing the investment's appreciation.  (D.I. 5 at 18).  As to the undisputed facts, Camshaft cites (1) Adv. D.I. 28–4 & 28–5 – its responses and objections to interrogatories and document requests – without citation to any paragraph, page number, or exhibit that could support its assertion of appreciation; and (2) Adv. D.I. 28–7, which is merely a certificate of service on opposing counsel with respect to Camshaft's motion for a protective order.  These submissions contain no evidence of appreciation.  On the other hand, the Bankruptcy Court noted that Ravindran's testimony supported the Debtor's assertion that it did not receive any reasonably equivalent value, which must be assessed at the time of the transfer, not after the transfer occurred.  Moreover, there is no evidence that the Debtor had received any of appreciation – indeed, it still does not even know where the Alpha Funds are.  These are rational bases for concluding that the Debtor is likely to succeed on its fraudulent transfer claims and that Camshaft's reasonably equivalent value defense, relevant only to the Debtor's constructive fraudulent transfer, may not succeed.

Movants further argue that the Bankruptcy Court ignored a statement by Mr. Pohl at the first day hearing that the Lenders were satisfied that the Alpha Funds were not dissipated in March 2023 when those funds were already with Camshaft.  (*See* 3/4/24 Tr. at 155:14–156:7; Bankr. D.I. 7, ¶ 56).  The Bankruptcy Court considered this testimony and invited the Debtor and GLAS to respond.  (3/14/24 Tr. at 164:8–168:4).  In March 2023, the Lenders and Mr. Pohl did not know about Camshaft or the Camshaft or Inspilearn transfers and believed that the Alpha Funds were

still within the Debtor and existed in cash.  (*Id*. 166:1–167:18).  The Lenders' knowledge or belief has no bearing on any element of the Debtor's fraudulent transfer claims and does not demonstrate an abuse of discretion in granting injunctive relief.

Finally, Movants argue that the Debtor's own complaint asserts that Camshaft has transferred the Alpha Funds and no longer possesses them.  (D.I. 5 at 19).  Movants argue that U.S. Supreme Court precedent bars injunctive relief that conflicts with a party's own allegations. (*See id*.).  The case that Camshaft cites, however, *De Beers Consolidated Mines v. United States*, 325 U.S. 212 (1945), denied the injunction only because the property to be frozen was "wholly outside the issues in the suit."  *Id*. at 220.  As the Appellees correctly point out, that is the opposite of this case, where the assets being frozen are the *res* of the case – the Alpha Funds.

## B.   Irreparable Harm In Absence of a Stay

Whether a moving party has established irreparable harm is the second of the two "most critical factors" in determining whether the moving party carried its burden to obtain a stay pending appeal.  *In re Revel AC*, 802 F.3d at 571.  Irreparable harm "refer[s] to 'harm that cannot be prevented or fully rectified' by a successful appeal.'"  *Id*. at 568 (quoting *Roland Mach. Co. v. Dresser Indus*., 749 F.2d 380, 386 (7th Cir. 1984)).  Moreover, the movant must "demonstrate that irreparable injury is likely [not merely possible] in the absence of [a] [stay]."  *Id*. at 569 (quoting *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008)).  The Third Circuit has held that pure economic injury does not satisfy the irreparable injury requirement.  *Minard Run Oil Co. v. Forest Service*, 670 F.3d 236, 255 (3d Cir. 2011).

### 1.   The Contempt Order

Movants argue that, "in the absence of a stay of the Contempt Order, Appellants would either have to comply with the March 1 Order, thereby mooting their meritorious appeal, or face steep financial penalties and, in the case of Mr. Morton, commitment to jail."  (D.I. 5 at 19; D.I. 17

at 9 (citing *In re Roche,* 448 U.S. 1312, 1316 (1980) (finding irreparable harm where, absent stay, the applicant faced the "unpalatable choice" compliance with the contempt order, which would moot his appeal, or civil confinement))).   This Court agrees with the Bankruptcy Court that Mr. Morton is not likely to suffer irreparable harm by continued imposition of the Contempt Order because "[c]ompliance with the [discovery] order would purge the contempt," and "monetary sanction[s] associated with the appeal would be obviously subject to reversal" if Movants prevail on appeal.  (4/9/24 Tr. at 49:10–19).  Indeed, Movants "need not suffer any injury—let alone an irreparable injury," if they just comply with the Bankruptcy Court's order.  *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 6442270, *2 (D. Del. Oct. 3, 2023) (denying stay pending appeal of contempt order).   Finally, the risk of mootness of Movants' appeal "by itself is insufficient to demonstrate irreparable injury for purposes of a stay," otherwise "a stay would be issued in every" appeal.  *In re W.R. Grace & Co.*, 475 B.R. 34, 206–07 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013).  Instead, the existence of irreparable harm turns on the nature of the injury allegedly resulting from the compliance with the order.  *Id*.  Here, Movants fail to present "any evidence of irreparable injury from complying with the Court's orders to produce the requested documents."  *Wachtel v. Health Net, Inc.*, 2007 WL 1101436, *4 (D.N.J. Apr. 10, 2007) (denying stay of contempt order); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 2013 WL 5937342, *1 (M.D. Pa. Nov. 4, 2013) (monetary sanction not irreparable harm).

### 2.   The PI Order

The Bankruptcy Court found that enforcing the PI Order – which merely freezes assets – would not irreparably harm Camshaft because compliance with that order does not require Camshaft to do anything; it merely preserves the status quo, preventing Camshaft from using or transferring any Alpha Funds in its possession.  Indeed, Camshaft has not articulated any harm.  It merely argues that it would be irreparably harmed "because the [PI] order requires it to prevent

the transfer of the Alpha Funds even though Camshaft has no access to those funds or control over them . . . . Thus, the PI Order exposes Camshaft to penalties for non–compliance when it is in fact impossible for Camshaft to comply." (D.I. 5 at 19–20). Such a reading of the PI Order is unsupported. If, as Camshaft insists, it does not possess the Alpha Funds, Camshaft cannot possibly violate the injunction, let alone suffer irreparable harm from it.

## IV.    <u>CONCLUSION</u>

Movants have failed to carry their burden on the two most critical factors—likelihood of success on the merits and irreparable harm – with respect to both Orders. Accordingly, no further analysis is required, and the Court will deny the Stay Motion. *See In re Revel AC*, 802 F.3d at 571. An appropriate order follows.