## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: BYJU'S ALPHA, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 24-10140 (JTD) |
| _____ | ) | |
| BYJU's ALPHA, INC., | ) | Adv. No. 24-50013 (JTD) |
| | ) | |
| Plaintiff/Appellee, | ) | |
| v. | ) | |
| | ) | |
| CAMSHAFT CAPITAL FUND, LP, | ) | |
| CAMSHAFT CAPITAL ADVISORS, LLC, | ) | |
| CAMSHAFT CAPITAL MANAGEMENT, | ) | C.A. No. 24-358 (MN) |
| LLC, RIJU RAVINDRAN AND | ) | C.A. No. 24-492 (MN) |
| INSPILEARN LLC, | ) | (Consolidated) |
| | ) | |
| Defendants/Appellants. | ) | |
| | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

William C. Morton, *pro se* appellant.

Susheel Kirpalani, Benjamin Finestone, William B. Adams, Daniel Holzman, Jianjian Ye, QUINN EMANUEL URQUHART & SULLIVAN LLP, New York, NY; Robert S. Brady, Kenneth J. Enos, Jared W. Kochenash, Timothy R. Powell, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE– Attorneys for appellee BYJU's Alpha, Inc.

George W. Hicks, Jr., KIRKLAND & ELLIS LLP, Washington, DC; Seth M. Cohen, KIRKLAND & ELLIS LLP, San Fracisco, CA; Patrick J. Nash, Jr., KIRKLAND & ELLIS LLP, Chicago, IL; Brian Schartz, KIRKLAND & ELLIS LLP, New York, NY; Laura Davis Jones, Peter J. Keane, PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE—Attorneys for appellee GLAS Trust Company LLC.

March 28, 2025
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court are the above-captioned consolidated appeals filed by Camshaft Capital Fund, LP, Camshaft Capital Advisors, LLC, Camshaft Capital Management, LLC (collectively, "Camshaft") and William C. Morton ("Mr. Morton," and, together with the Camshaft, "the Appellants") with respect to the Bankruptcy Court's (i) March 14, 2024 Order on Finding of Contempt (Adv. D.I. 80)[1] ("the Contempt Order"), and (ii) March 18, 2024 Order Granting Debtor's Motion for a Preliminary Injunction (Adv. D.I. 84) ("the PI Order").  (Civ. No. 24-358-MN, D.I. 1).   Appellants separately appealed the Bankruptcy Court's April 3, 2024 Memorandum Opinion (A4746-69), *In re BYJU's Alpha, Inc*., 2024 WL 1455586 (Bankr. D. Del. Apr. 3, 2024) ("the Memorandum Opinion") issued in support of the Contempt Order, "to the extent it functions as an order which alters or supplants, rather than supplements or clarifies, that certain . . . [Contempt Order], and does not otherwise comport with Rule 8003-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware."  (Civ. No. 24-492-MN, D.I. 1).[2]  These appeals were consolidated on June 7, 2024. (D.I. 22).[3]  In connection with the consolidated appeal, appellees BYJU's Alpha, Inc. ("BYJUs") and GLAS Trust Company, LLC ("GLAS" and together with BYJUs, "the Appellees") have

---

[1]    The docket of the Chapter 11 case, captioned *In re BJYU's Alpha, Inc*., Case No. 24-10140 (JTD) (Bankr. D. Del.) is cited herein as "Bankr. D.I. __," and the docket of the adversary proceeding, captioned *BYJU's Alpha, Inc. v. Camshaft Capital Fund, LP, et al.,* Adv. No. 24-50013 (JTD), is cited herein as "Adv. D.I. __."  The appendix filed in support of Appellants' opening brief (D.I. 36-41) is cited herein as "A__."

[2]    Appellants' opening brief raises no argument as to whether (or how) the Memorandum Opinion "alters or supplants, rather than supplements or clarifies" the Contempt Order.

[3]    Unless otherwise indicated, the docket of the consolidated appeal, Civ. No. 24-358-MN, is cited as "D.I. __."

jointly moved to dismiss (D.I. 58) ("the Motion to Dismiss") the consolidated appeal based on Camshaft's failure to obtain counsel.

For the reasons set forth herein, Camshaft lacks the right to immediately appeal the Contempt Order. Even assuming that Camshaft had such a right, Camshaft and Mr. Morton, who has chosen to proceed *pro se*, have together failed to show any abuse of discretion. Accordingly, the Contempt Order will be affirmed. Appellants have waived their appeal of the PI Order. Having ruled on the merits, the Motion to Dismiss for failure to obtain counsel is moot.

## I.   BACKGROUND

### A.   The Debtor and the Alpha Funds

The following facts appear undisputed. BYJU's Alpha, Inc. ("the Debtor") is a special purpose vehicle formed by an indirect subsidiary of Think and Learn Private Limited ("T&L"), an Indian corporation. *See In re BYJU's Alpha, Inc*., 2024 WL 1455586, at *1. T&L is a family-run business, and its three-member board consists of founder Byju Ravindran, his younger brother Riju Ravindran ("Mr. Ravindran"), and Byju's wife, Divya Gokulnath. At all times relevant to this dispute, Mr. Ravindran served as the sole director of the Debtor. *Id*.

Appellants are effectively just Mr. Morton, as the founder, CEO, and seemingly only employee of Camshaft.[4] Certain facts brought Camshaft's legitimacy into serious question.[5]

---

[4]   *See In re BYJU's Alpha, Inc*., 2024 WL 1455586, at *2 ("The Debtor alleges that Camshaft has no working telephone and publicly misrepresents its management team to include individuals who are unaware that they are being held out in such capacity. The evidence suggests that Mr. Morton is actually Camshaft's sole employee.").

[5]   For example, the address for Camshaft's principal place of business, supplied by Camshaft to the SEC, is actually the address of an IHOP located in Miami, Florida. Camshaft eventually provided an additional address, which points to a sparsely furnished room that shows no sign of regular activity. *In re BYJU's Alpha, Inc*., 2024 WL 1455586, at *2.

In November 2021, the Debtor—with T&L and its affiliates serving as guarantors—borrowed $1.2 billion from certain lenders ("the Lenders") with GLAS serving as the Lenders' agent. *Id*. There are three alleged transfers at the center of this dispute.

First, in late April 2022, the Debtor alleges that Mr. Ravindran and T&L caused the Debtor to transfer over $533 million of cash ("Alpha Funds") to Camshaft, ostensibly in exchange for a limited partnership interest in Camshaft Capital Fund, LP ("Camshaft LP Interest"). The Debtor asserts it has received no return from the purported investment in Camshaft.

Second, in March 2023, the Debtor alleges that Appellants facilitated Mr. Ravindran's and T&L's transfer of the Debtor's Camshaft LP Interest to another T&L subsidiary controlled by Mr. Ravindran—Inspilearn LLC ("Inspilearn"). (D.I. 13-2, Ex. 1 at 5). The Camshaft LP Interest—valued then by Appellants at almost $540 million (*id.*)—was the Debtor's property but the Debtor alleges that it received nothing in the Inspilearn transfer. (D.I. 13-2, Ex. 2 ("3/14/24 Tr.") at 24:21-25:6, 56:10-15).

By October 2023, following four defaults on the covenants under the credit agreement between the Debtor, its affiliates, and the Lenders, GLAS accelerated the loans and replaced Mr. Ravindran with Timothy Pohl to serve as the Debtor's sole director and officer.[6] On February 1, 2024, the Debtor filed for chapter 11 protection. The very same day, Inspilearn transferred the Camshaft LP Interest to an offshore trust, presumably to move the funds away from U.S. jurisdiction. (D.I. 13-2, Ex. 1 at 4). This is the third alleged fraudulent transfer.

On February 2, 2024, the Debtor initiated the adversary proceeding asserting fraudulent transfer claims against Camshaft and seeking to recover the Alpha Funds—almost certainly the

---

[6]     Subsequent litigation in the Delaware Court of Chancery affirmed Pohl's appointment. *See* Final Order and Judgment, *Glas Trust Co. LLC v. Ravindran*, C.A. No. 2023-0488 (Del. Ch. 2023).

single largest asset of the Debtor's estate. (*See* Adv. D.I. 40 ("Amended Compl.") ¶¶ 45-53). There appears to be no dispute that the funds were transferred from the Debtor to Camshaft. Camshaft's CEO and sole employee Mr. Morton refused to identify the offshore trust to which the Camshaft LP Interest was transferred, despite the various Bankruptcy Court orders outlined below.

**B.      The Prior Orders**

On February 5, 2024, the Bankruptcy Court held a hearing to consider certain first day motions during which the court directed Camshaft to confer with the Debtor to locate the Alpha Funds. (D.I. 13-2, Ex. 3 ("2/5/24 Tr.") at 51:10-12). Camshaft refused to confer.

On February 16, 2024, the Bankruptcy Court issued an order granting the Debtor's motion for expedited discovery, which required Camshaft to respond to the Debtor's interrogatories and provide discovery regarding the Alpha Funds. (Adv. D.I. 22 at 2). Camshaft issued a response, but with an "attorneys' eyes only" designation. Camshaft eventually agreed to remove the "attorneys' eyes only" designations from its responses. Although Camshaft disclosed, for the first time, that it facilitated transferring the Alpha Funds overseas to a "non-US Trust" on the Petition Date, Camshaft refused to identify the "non-US Trust." (D.I. 13-2, Ex. 1 at 4).

On February 27, 2024, the Bankruptcy Court held a conference to address Camshaft's deficient discovery responses and instructed Camshaft to make "full disclosure by Friday [March 1]." (*See* D.I. 13-2, Ex. 4 ("2/27/24 Tr.") at 11:5-7). Camshaft refused and moved for a protective order, seeking a ruling that it was not required to respond to the outstanding discovery on relevance grounds. (Adv. D.I. 28).

At a hearing on March 1, 2024, the Bankruptcy Court denied the motion for protective order and ordered Camshaft to provide the requested discovery by the end of that day ("the March 1 Order"). (D.I. 13-2, Ex. 5 ("3/1/24 Tr.") at 25:2-10). To ensure Camshaft's compliance, the Bankruptcy Court set a status conference for Monday, March 4, 2024. (*Id.*). The Bankruptcy

Court warned that, "[a]s part of that status conference," it "will consider whether or not [it is] going to issue a notice to show cause" if Camshaft failed to provide discovery. (*Id.* at 25:7-10). It also requested Mr. Morton's in-person appearance for the conference:

> COURT: I would request that [Mr. Morton] be in the courtroom for that hearing . . . I think it will be very important for him to be here. I think he needs to hear it from me directly.
>
> COUNSEL: Understood, Your Honor. Thank you.

(*Id*. at 25:11-21). Camshaft failed to comply with the March 1 Order.

An hour before the March 4, 2024 status conference, Camshaft's counsel emailed the Bankruptcy Court advising that Mr. Morton "is in transit to Dubai" and therefore would not attend the conference in person despite the Bankruptcy Court's request. (D.I. 5, Ex. B at 1). At the status conference, counsel to Camshaft explained, "As to the question of the documents, as officers of the Court, we advised Mr. Morton that he should produce the documents, he should produce the information, he declined. That is where we are today." (D.I. 13-2, Ex. 6 ("3/4/24 Tr.") at 4:15-18). Counsel continued, "[M]y client is not here today. I understood Your Honor's [request] that he appear. He is overseas and was not able to make it. He was actually on his way by the time Your Honor's order came out." (*Id*. at 3).

### C. The Show Cause Order

Consequently, the Bankruptcy Court determined to hold a hearing for Appellants to show cause why they should not be held in contempt for violating the March 1 Order and issued the Show Cause Order (Adv. D.I. 56) to be heard in conjunction with the Debtor's previously filed motion for injunctive relief, which sought an order prohibiting the transfer or use of the Alpha Funds. (Adv. D.I. 41). The Bankruptcy Cout advised:

> I want to make it absolutely clear to Mr. Morton that one of the possible remedies[ ] I am going to impose for the contempt is civil confinement if he doesn't comply with the order[, a]nd I want to

> give him every opportunity to be heard on that before I impose that
> penalty.

(3/4/24 Tr. at 13).  Camshaft's counsel requested that the show cause hearing be scheduled after March 6, 2024, in order to comply with due process.  (*Id.* at 11:20-24).  The Bankruptcy Court agreed and ordered Mr. Morton to "appear in person" for a show cause hearing on March 14, 2024. (Adv. D.I. 56).  The Bankruptcy Court reiterated that it would "consider all possible sanctions against Camshaft and Mr. Morton, including placing Mr. Morton in civil confinement until he purges himself of such contempt."  (*Id.*).

### D.    The Contempt Order

At 3:54 p.m. on the eve of the show cause hearing, Judge Dorsey's chambers received an email from Camshaft's counsel indicating that Mr. Morton "cannot attend in person" because he had "recently been hospitalized and thus remains overseas," but that he wished to appear at the show cause hearing remotely via Zoom.  Consistent with the Federal Rules of Civil Procedure, and Judge Dorsey's chambers' procedures which allow witnesses to testify remotely upon showing of good cause,[7] the Bankruptcy Court responded to the email and informed Camshaft's counsel that in order to evaluate Mr. Morton's request, it would need (1) some proof that he had actually been hospitalized, (2) clarification as to whether he intended to have his own counsel appear at the show cause hearing, and (3) clarification as to whether he intended to comply with the order to produce the requested discovery.  Thirty minutes before the start of the show cause hearing, the Bankruptcy Court received a response from Camshaft's counsel, informing the Court that (1) Mr. Morton had

---

[7]    *See* Chambers Procedures for Judge John T. Dorsey (revised Jan. 11, 2024), https://www.deb.uscourts.gov/judge-john-t-dorsey ("The remote attendance of live witnesses is permitted only upon a showing of good cause and in compelling circumstances.  *See* Fed. R. Civ. P. 43(a)."); Fed. R. Civ. P. 43(a) ("For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.").

been discharged without providing any proof of his hospitalization, (2) Mr. Morton's separate counsel would not appear at the show cause hearing, and (3) Mr. Morton did not intend to comply. (3/14/24 Tr. at 5:4-6 ("Camshaft's counsel advised me that Mr. Morton was allegedly now released from the hospital, but . . . provided no proof")).

At the March 14, 2024 hearing, Appellants did not present any evidence or argument to justify their refusal to comply with the prior orders or to show that they would be unable to pay fines. Appellants simply identified Camshaft's interrogatory response: Mr. Morton said he did not have the Alpha Funds. (*Id*. at 7:18-22). The Bankruptcy Court declined to credit Mr. Morton's statement given his "absolute contempt for the court." (*Id.* at 7:23-8:2). The Bankruptcy Court further found that "Camshaft's brazen insistence on concealing the location and control of [the Alpha Funds] strongly indicates that it retains some ownership and control over it"— controverting Mr. Morton's unsubstantiated statement that he lacked access to the Alpha Funds. *In re BJYU's Alpha, Inc.,* 2024 WL 1455586, at *10.

Having concluded that Appellants' conduct satisfied the standard for contempt, *id*. at *4, the Bankruptcy Court issued a bench ruling holding both Camshaft and Mr. Morton in contempt. The Contempt Order imposed a daily fine of $10,000 on each of Camshaft and Mr. Morton until "Camshaft produces the information it was ordered to produce at the hearing on March 1, 2024," and ordered Mr. Morton's confinement. *Id.* at *4, n.38 (explaining Contempt Order). Because Mr. Morton remained at large, the Bankruptcy Court held "a chambers conference with the U.S. Marshals, debtor's counsel, the U.S. Trustee's counsel" to discuss "Mr. Morton and whatever information the debtor[] had about Mr. Morton and how to locate him." (3/14/24 Tr. at 7:7-11).

The court also addressed Camshaft's only due process objection—that the Contempt Order was entered without Mr. Morton's presence—explaining that Mr. Morton had received more than

sufficient process given his failure to appear or "provide an adequate excuse for why he could not be here." (*Id*. at 8:6-12). Camshaft's counsel made no further objection. (*Id.* at 8:13).

### E.    The PI Order

Following the issuance of the contempt documents, the Bankruptcy Court reconvened the hearing and heard argument and evidence on the Debtor's motion for injunctive relief. Camshaft did not present any witnesses or evidence, nor did Camshaft examine any witnesses offered by the Debtor and Mr. Ravindran. Mr. Ravindran testified at the hearing remotely after he explained his overseas presence to the Bankruptcy Court, and the Bankruptcy Court found good cause. (*Id.* at 14:1-15:11). Camshaft chose to only "make two quick points" (*id.* 153:25-154:1), to which both the Debtor and GLAS responded. (*Id.* at 164:8-168:4). Having found that the Debtor was likely to succeed on its claims and that it would suffer irreparable harm absent preliminary injunctive relief, the court granted that motion and issued "a freeze injunction preventing the transfer of the funds or the use of the funds, wherever they might be located . . . ." (*Id*. at 171:8-14; 180-81).

The Bankruptcy Court subsequently entered the PI Order (Adv. D.I. 82, 84) memorializing its ruling, and later issued its Memorandum Opinion further explaining its ruling. *In re BYJU's Alpha, Inc.,* 2024 WL 1455586, at *5-*11. On March 19, 2024, Camshaft alone appealed the Contempt Order and the PI Order. An Amended Notice of Appeal, adding Mr. Morton as an appellant, was filed on March 28, 2024. (D.I. 3). On April 17, 2024, all Appellants appealed the Memorandum Opinion.

### F.    The Orders Denying Appellants' Stay Motion

On March 27, 2024, Appellants moved in the Bankruptcy Court for a stay of the Contempt Order and PI Order pending the appeal. On April 9, 2024, the Bankruptcy Court denied Appellants' stay motion, ruling that Appellants had failed to demonstrate any likelihood of success on appeal or irreparable harm absent the stay. (D.I. 13-2, Ex. 7 ("4/9/24 Tr.") at 49:2-9).

On April 15, 2024, Appellants filed a motion for stay pending appeal in this Court. (D.I. 5). That motion was denied on July 18, 2024. (D.I. 26, 27). On July 22, 2024, the Court approved the parties' stipulated briefing schedule on the merits. (D.I. 33). The appeals are fully briefed. (D.I. 35, 46, 50).

**G.** **The June 11 Order**

Following certain document production, in June 2024, Appellants filed a motion requesting that the Bankruptcy Court vacate the Contempt Order and remit any contempt fines that had accrued. (A7462-76). On June 11, 2024, the Bankruptcy Court held a hearing on the Appellants' motion to vacate and remit as well as a motion for sanctions (in the form of a default judgment) filed by Appellees based on Camshaft's noncompliance with discovery. The Bankruptcy Court denied the motion for sanctions, lifted the warrant for Mr. Morton's arrest so he could return to the U.S. for a deposition, and paused the accrual of contempt fines pending Appellants' turnover of certain native files. (A7978-79). The Bankruptcy Court denied, however, Appellants' request to remit the contempt fines that had accrued as of June 11, 2024, rejecting Appellants' argument that retaining the fines post-compliance would transform the Contempt Order into a criminal contempt order. (*See* Adv. D.I. 258 ("6/11/24 Tr.") at 72:20-73:9). The Bankruptcy Court further stated:

> Again, given that Mr. Morton fled the country and refused to return, return to sit for his deposition, refused to produce the documents until the date of his choosing, I am not going to use any equitable power that I might have to remit those fines. The fines stand.

(*Id*. at 73:11-16).

## II.    JURISDICTION

### A.    The Contempt Order

The parties dispute whether the Contempt Order is a final, appealable order such that this Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).  There is no dispute that non-party Mr. Morton has the right to immediately appeal the Contempt Order.  (D.I. 26 at 10).  A party to an action, on the other hand, lacks the right to appeal a civil contempt order "except in connection with an appeal from a final judgment or decree."  *Fox v. Capital Co.*, 299 U.S. 105, 108 (1936).  Although a civil contempt order is immediately appealable by non-parties, "when directed against *parties*, such orders are interlocutory and unreviewable except incident to an appeal from a judgment otherwise appealable."  *Halderman v Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 636 (3d Cir. 1982) (emphasis added).

The purpose of this rule is to prevent "perpetual relitigation" and ensure "the finality of judgments of both appellate and trial courts."  *Id.* at 637.  It applies even if a non-party may have an immediate right to appeal the same civil contempt order to which a party is also subject.  *See DeMasi v. Weiss*, 669 F.2d 114, 122-23 (3d Cir. 1982) (where discovery order "is directed to both parties and nonparties, only [nonparties] will have the right of immediate appeal following the imposition of civil contempt sanctions if they refuse to obey the district court's order" whereas defendants "have no immediate right to appeal from civil contempt citations . . . unless permitted to take an interlocutory appeal pursuant to 28 U.S.C. § 1292(b)").

Camshaft is a party to the adversary proceeding in which the Contempt Order was entered and therefore has "no immediate right to appeal" from the Bankruptcy Court's order of civil contempt.  *DeMasi*, 669 F.2d at 122-23.  Contrary to Camshaft's assertion (D.I. 35 at 3), this Court did not previously conclude that the Contempt Order is appealable by Camshaft.  This Court ruled only that Mr. Morton's right to appeal the Contempt Order was a "sufficient" jurisdictional basis

10

"to consider the relief requested in the Stay Motion." (D.I. 26 at 10). Finally, Camshaft has previously asserted (D.I. 17 at 3) that it may appeal the Contempt Order because that order is "*incidental* to an appealable order" by Mr. Morton. That argument is based, however, on a misreading of *Halderman*. "[W]hen directed against parties," like Camshaft, civil contempt orders are "interlocutory and unreviewable except [when they are] incident to an appeal from a *judgment otherwise appealable*," *Halderman*, 673 F.2d at 636 (emphasis added). Camshaft cites no decision supporting its position that the civil Contempt Order is a judgment otherwise appealable. (*See* D.I. 50 at 4-5).

As Camshaft lacks an immediate right to appeal from the Contempt Order, and leave to appeal is unwarranted here, Camshaft's appeal of the Contempt Order should be dismissed. Additionally, Camshaft failed to obtain counsel and cannot proceed *pro se* with respect to the consolidated appeal.[8] Finally, as set forth below, even assuming that Camshaft may appeal the

---

[8]     On July 19, 2024, the Camshaft's then-attorneys, Pieter Van Tol, Christopher R. Bryant, and Elizabeth Carter of Hogan Lovells US LLP moved to withdraw from this matter based on an irreparable "breakdown in the[ir] relationship," and noting that continued representation would impose a financial burden on the firm. (D.I. 30 at 4-5). Camshaft "indicated that [it] d[id] not consent to the termination of the representation." (*Id.* at 4). Nevertheless, Camshaft never filed an opposition to Hogan Lovells' withdrawal motion. On October 10, 2024, this Court granted counsel's motion to withdraw. (D.I. 52).

    As this Court has recognized, "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel," and "that rule applies equally to all artificial entities." *Van de Berg v. Comm'r*, 175 F. App'x 539, 541 (3d Cir. 2006) (quoting *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993)); *see also Dougherty v. Snyder*, 469 F. App'x 71, 72 (3d Cir. Mar. 21, 2012) ("[t]he same applies to LLC's . . . because even single-member LLCs have a legal identity separate from their members"). Thus, in granting Camshaft's former counsel's motion to withdraw, it was ordered that "on or before 11/12/2024, Camshaft . . . shall retain new counsel and that counsel shall enter an appearance in this action." (D.I. 52). Camshaft failed to comply, and by all indications, seeks to maintain a *pro se* appeal in federal court.

    Various courts of appeals permit corporate entities to cure deficient notices of appeal filed *pro se*. *See, e.g., Instituto de Educacion Universal Corp. v. U.S. Dep't of*

Contempt Order, Camshaft and Mr. Morton have together failed to demonstrate any abuse of discretion, which Appellants concede is the applicable standard of review.  (D.I. 5 at 11; D.I. 35 at 5).  *See Victory v. Berks Cnty.*, 789 F. App'x 328, 333 (3d Cir. 2019).

> **B.**    **The PI Order**

The Court has previously determined that it has jurisdiction over the appeal of the PI Order. (D.I. 26 at 10-12).  For the reasons set forth below, Appellants waived their appeal of the PI Order.

## III.    ANALYSIS

> **A.**    **Appellants Have Failed to Show that the Bankruptcy Court Abused Its Discretion in Issuing the Contempt Order**

Section 105 of the Bankruptcy Code allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  This equitable authority gives a bankruptcy court the discretion to hold individuals and entities in civil contempt if they knew about and disobeyed "a valid order of [the] court."  *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995); *In re Vaso Active Pharms., Inc.*, 514 B.R. 416, 422-23 (Bankr. D. Del. 2014).  Sanctions for civil contempt can be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.  *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303-04 (1947).  Where the purpose is compliance, the court exercises its discretion and must

---

*Educ.*, 209 F.3d 18, 22 (1st Cir. 2000); *Bigelow v. Brady*, 179 F.3d 1164, 1165-66 (9th Cir. 1999).  The Third Circuit has distinguished those decisions, however, from cases where, as here, appellants "evinced a 'clear intention' to proceed *pro se*."  *In re 69 North Franklin Turnpike, LLC*, 693 F. App'x 141, 144 (3d Cir. Aug. 1, 2017) (quoting *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 974 (9th Cir. 2004)).  The Court is aware of no federal court decision which has permitted an entity to prosecute an appeal after counsel for related corporate entities and their managing member withdrew from a case based on a failure to cooperate or pay attorney's fees.

"consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* at 304.

To establish that a party is liable for civil contempt, it must be shown: (1) that a valid order of the court existed; (2) that the defendant had knowledge of the order; and (3) that the defendant disobeyed the order. *Marshak v. Treadwell,* 595 F.3d 478, 485 (3d Cir. 2009) (quoting *Harley-Davidson, Inc. v. Morris,* 19 F.3d 142, 145 (3d Cir. 1994)). Parties should not be held in contempt unless the Court first gives fair warning that certain acts are forbidden. *United States ex rel. I.R.S. v. Norton*, 717 F.2d 767, 774 (3d Cir. 1983). These safeguards "ensure that the parties or their attorneys have an opportunity to explain the conduct deemed deficient before the [sanction] is imposed and that a record will be available to facilitate appellate review." *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1127 (3d Cir. 1990). "The fundamental requirements of due process are notice and a meaningful opportunity to be heard, but the 'concept is flexible, calling for procedural protection as dictated by the particular circumstance.'" *Harris v. City of Philadelphia*, 47 F.3d 1333, 1338 (3d Cir. 1995) (quoting *Kahn v. United States*, 753 F.2d 1208, 1218 (3d Cir. 1985)).

### 1.  **Appellants Received Due Process**

Appellants argue that the Bankruptcy Court denied them due process when it would not allow Mr. Morton (the only witness for Camshaft) to appear by videoconference at the March 14 hearing:

> The basis for the Bankruptcy Court's rejection of Mr. Morton's request to appear remotely was that Mr. Morton did not provide written proof of his recent hospitalization. The Bankruptcy Court, however, allowed Mr. Ravindran to appear remotely at the same hearing without requiring written proof establishing his unavailability under Rule 43(a) . . . There is no reason why Mr. Morton did not have the same opportunity, especially given that he faced the serious consequence of civil confinement.

(D.I. 35 at 15-16).  At the March 1, 2024 hearing, the Bankruptcy Court instructed Camshaft and Mr. Morton to "produce the information that has been requested . . . by the end of the day today." (A8609).  The Bankruptcy Court warned that if the parties did not comply with the ordered production, it would hold a hearing to determine why they should not be held in contempt.  (A8609, A8617).  Three days later, at the promised hearing, Mr. Morton again refused to appear or to explain his continued refusal to comply with the March 1 discovery order.  (A8631).  The Bankruptcy Court repeated its warning that Camshaft and Mr. Morton would be held in contempt if they refused to comply.  (A8631).  The Bankruptcy Court issued a show cause order explicitly directing Mr. Morton to appear in person at yet another hearing on March 14 to show cause why he should not be held in contempt, and it specifically identified fines and civil confinement as potential contempt sanctions.  (A2480-81, A8631).  Appellants complain that these explicit warnings of civil confinement reflect the Bankruptcy Court's "improper[]" intention "all along to subject to Mr. Morton to civil confinement."  (D.I. 35 at 25-26).  To the contrary, they confirm that the Bankruptcy Court provided the requisite "fair warning" before imposing civil contempt. *Roe*, 920 F.2d at 217.  The Bankruptcy Court appropriately determined that the standards for civil contempt were met in this case, as it provided Appellants sufficient opportunities to be heard.

Despite his knowledge of the Bankruptcy Court's valid order requiring him to produce documents, three warnings that he would be held in civil contempt if he did not produce the documents, and two different opportunities to appear before the Bankruptcy Court to explain his non-compliance, Mr. Morton nevertheless "refused" to appear on March 14 or comply with the discovery order.  This Court agrees with Appellees that, given Mr. Morton's refusal to comply with the Bankruptcy Court's valid discovery order, and Camshaft's refusal to direct its sole officer to comply, the Bankruptcy Court was well within its discretion to do exactly what it warned it would do: hold Camshaft and Mr. Morton in civil contempt.

14

Appellants do not challenge the Bankruptcy Court's March 1 discovery order as invalid or claim they did not have knowledge of the order. Rather, they argue they were deprived of due process because the Bankruptcy Court "entered the Contempt Order without Mr. Morton's participation." (D.I. 35 at 18). The Bankruptcy Court held three separate hearings on the required production—on March 1, 4, and 14—before holding them in contempt. Camshaft attended all three of those hearings and was heard, and Mr. Morton does not dispute that he had the ability to attend at least two of those hearings. Those opportunities alone satisfy due process. *See Hayes v. Cape Henlopen Sch. Dist.*, 341 F. Supp. 823, 835 (D. Del. 1972) (a party "cannot bypass or refuse to participate in [the procedures] actually provided and subsequently challenge their unavailability"); *see Sec'y U.S. Dep't of Labor v. Koresko*, 726 F. App'x 127, 133 (3d Cir. 2018) (party who "received adequate notice" of contempt hearing yet "chose not to attend" or "object in writing" cannot subsequently assert due process challenge). Notwithstanding those opportunities, Appellants never sought to explain their persistent refusal to comply with the discovery order.

Ignoring Camshaft's appearance at all three hearings and Mr. Morton's undisputed ability to attend at least two of the hearings, Appellants hang their due process hat on the Bankruptcy Court refusal to permit Mr. Morton to attend the March 14 hearing remotely. (*See* D.I. 35 at 19). Appellants cite no authority, however, for their proposition that a court abuses its discretion or deprives a party of due process by enforcing its own rule prohibiting remote appearances absent a showing of good cause. Rather, "live testimony in open court is a deeply entrenched default that will only be excused when three factors are met—good cause, compelling circumstances, and appropriate safeguards." *J.D. v. Price*, 619 F. Supp. 3d 523, 526 (W.D. Pa. 2022). Even then, Rule 43 states that a court "*may*" excuse an in-person appearance; it is not required to do so. *See* Fed. R. Civ. P. 43 (emphasis added); *see also* Fed. R. Bankr. P. 9017 (incorporating Federal Rule

of Civil Procedure 43(a) into bankruptcy proceedings).  The Bankruptcy Court did not abuse its discretion by enforcing a discretionary rule that is consistent with the federal rules and case law.

Appellants note that other courts have allowed parties to "establish unavailability through statements by counsel."  (D.I. 35 at 19-20).  But Appellants have not shown that the circumstances in those cases were similar to those here (including Mr. Morton's repeated refusal to comply with court orders).  Appellants' cited cases demonstrate that the decision "to accept or reject counsel's representations" always falls "within the discretion of the trial court."  *Castilleja v. Southern Pac. Co.*, 445 F.2d 183, 186-87 (5th Cir. 1971).  That other courts, in other cases involving different circumstances, have exercised their discretion to permit parties to testify remotely upon the requisite showing does not mean the Bankruptcy Court here abused its discretion by determining Mr. Morton did *not* adequately establish good cause.  *See, e.g.*, *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 573 (6th Cir. 2021) ("The abuse of discretion standard recognizes that the application of general standards . . . may lead different jurists to different results."); *Evers v. Equifax, Inc.*, 650 F.2d 793, 797 (5th Cir. 1981) ("The existence of a similar case with a different result . . . is not conclusive of an abuse of discretion.").

Appellants further suggest that the Bankruptcy Court failed to give Mr. Morton an "opportunity" to excuse his in-person appearance for good cause.  (D.I. 35 at 20).  After first learning of Mr. Morton's intended absence at 3:54 p.m. the day before the March 14 hearing, the Bankruptcy Court requested (1) proof that Mr. Morton had been "hospitalized," (2) clarification as to whether he intended to have his own counsel appear at the hearing, and (3) clarification as to whether he intended to comply with the underlying discovery order. (A4751-52; 3/14/24 Tr at 4).  Neither Camshaft nor Mr. Morton provided any of the requested information until thirty minutes before the hearing was scheduled to start.  (A4752; 3/14/24 Tr. at 4-5).  Moreover, the limited answers provided were not reassuring: Mr. Morton's counsel stated that he would not appear at

the hearing and that Mr. Morton did not intend to comply with the court's discovery order. (A4752; 3/14/24 Tr. at 5).

In their opening brief, Appellants assert, without citation to the record, that, long after the hearing, they "provided documentation to the Debtor and GLAS showing that Mr. Morton was in fact hospitalized just before the March 14 Hearing." (D.I. 35 at 12). In their reply, Appellants explain that the evidence of the hospitalization was provided in response to discovery requests. (*See* D.I. 50 at 8 (citing Adv. D.I. 302, Ex. BB at 6-7, and Ex. CC at 19). Appellants' cite is to a sealed declaration on the docket of the adversary proceeding that was neither designated as part of the record (*see* D.I. 4) nor made available to the Court anywhere in the appendix (*see* D.I. 36-41). Regardless of whether the Bankruptcy Court might have deemed such "documentation" sufficient to justify remote testimony, this information was not provided at the time the Bankruptcy Court requested it. The Bankruptcy Court did not abuse its discretion in declining to permit remote testimony when it was provided with no evidence warranting a departure from its own practice, the federal rules, and established case law.

This Court further rejects Appellants' argument that the "disparate" treatment of Mr. Ravindran and Mr. Morton violates due process. The show-cause hearing was specifically directed at Mr. Morton, not Mr. Ravindran, who, unlike Mr. Morton, had not been ordered to attend the hearing in person and was not facing civil contempt for repeated defiance of a court order. Moreover, unlike Mr. Morton, Mr. Ravindran established a factual basis justifying his request to appear remotely—he lived in Dubai and was currently caring for his parents in Dubai, who were undergoing cancer treatment and suffered from dementia. (3/14/24 Tr. at 14). The Bankruptcy Court was well within its discretion in determining that Mr. Morton and Mr. Ravindran were differently situated warranting differed rulings as to their appearance at the March 14 hearing.

### 2.    The Contempt Order Is Supported by the Record

Appellants further challenge the Contempt Order on the bases that "the Bankruptcy Court did not hold any sort of evidentiary hearing" and "did not make the requisite factual findings at the Contempt Hearing, including the critical determination as to whether the Camshaft Parties had the ability to pay the contempt fines imposed."  (D.I. 35 at 22).  The show cause hearing *was* the evidentiary hearing—Mr. Morton simply chose not to appear despite being ordered to do so, and Appellants chose not to present any evidence to carry their burden "to show that [they had] made 'in good faith all reasonable efforts to comply'" with the Bankruptcy Court's order.  *Harris*, 47 F.3d at 1342.  In any event, the Third Circuit and courts within it have held that an evidentiary hearing is not required before holding a party in civil contempt.  *Roe*, 920 F.2d at 217; *see In re Linerboard Antitrust Litig.*, 2010 WL 3928638, *4 (E.D. Pa. Oct. 5, 2010) ("evidentiary hearing[s]" are "not required" where parties "are given ample notice and an opportunity to respond, and [they] fail[] to present any arguments creating any material issue of fact").  Appellants do not cite any binding authority that says otherwise.

Moreover, it was Appellants' burden to "produc[e] evidence of [their financial] inability to comply with the sanctions order."  *Egnotovich v. Greenfield Twp. Sewer Auth.*, 378 F. App'x 121, 123-24 (3d Cir. 2010).  Although Appellants contend (D.I. 35 at 10 n.5) that discovery provided months *after* the hearing indicated that they "lack the resources to pay the contempt fines," they do not cite any evidence presented at (or prior to) the hearing that supports that contention.  *Cf. United States v. Rylander*, 460 U.S. 752, 757 (1983) (explaining that "a defendant may assert a present inability to comply with the order in question," but "in raising this defense, the defendant [bears the] burden of production") (emphasis omitted).  The only evidence Appellants claim to have presented at the time (D.I. 35 at 10) consists of interrogatory responses "stating that Camshaft does not have any access to the Alpha Funds."  (A1144, A1146).  Whether that is true or not, it

says nothing about Camshaft's ability to pay the proposed contempt fines with funds *other than* the Alpha Funds. The Bankruptcy Court correctly observed that Appellants presented "no proof" on that issue. (3/14/24 Tr. at 5).

### 3.        The Sanctions Imposed Were Appropriate

The Bankruptcy Court's Memorandum Opinion explained that "both monetary sanctions and civil confinement are the least coercive sanctions available" given "Mr. Morton's refusal to appear at the show-cause hearing, his failure to provide any proof of his hospitalization, and his outright refusal to provide the information he was ordered to produce." *In re BYJU's Alpha, Inc.,* 2024 WL 1455586, at *4 n.37. According to Appellants, however, there is "no indication that the Bankruptcy Court considered the least coercive sanctions necessary for compliance." (D.I. 35 at 25).

The Bankruptcy Court had "wide discretion" in imposing sanctions for civil contempt, *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994), and the Camshaft Parties' repeated refusal to comply with the discovery order pertaining to the whereabouts of the missing $533 million confirms that the sanctions that the Bankruptcy Court ultimately imposed were not punitive but appropriately tailored to ensure compliance. Indeed, notwithstanding the civil confinement order and $20,000 daily fine, Appellants did not comply with the discovery order and produce the requested documents for months. Appellants rely on decisions imposing smaller fines in other cases to argue that the sanctions here were excessive. (*See* D.I. 35 at 26-27). But the fact that other courts determined they were able to "coerce compliance" with a fine of between $100 and $1,000 per day under the circumstances of those cases does not mean the Bankruptcy Court's discretion was so limited—particularly when, as here, the Bankruptcy Court reasonably concluded that a smaller penalty would be insufficient to "win compliance with its orders." *In re BYJU's*

*Alpha, Inc.,* 2024 WL 1455586, at *4 n.37 (quoting *Pasternack v. Klein*, 2017 WL 1508970, *2-3 (E.D. Pa. Apr. 27, 2017)).

Indeed, as Appellees correctly point out, the smaller fines that were imposed in the cases cited by Appellants arose in smaller matters with substantially fewer assets at stake.  *See Ninaltowski v. Moore*, 2021 WL 3051932, *1, 3 (E.D. Pa. July 20, 2021) (imposing $250 daily fine in case involving car accident); *Shmueley v. Transdermal Specialties, Inc.*, 2019 WL 3002942, *1, 5 (E.D. Pa. July 10, 2019) (imposing $500 daily fine in case involving $120,000 claim for breach of contract); *Pasternack*, 2017 WL 1508970, *1, 3 (imposing $250 daily fine in case involving $50,000 claim for breach of contract); *Marks & Sokolov, LLC v. Mireskandari*, 2015 WL 4557271, *1, 5 (E.D. Pa. July 29, 2015) (imposing $250 daily fine to ensure compliance with $230,000 judgment); *Int'l Plastics & Equip. Corp. v. Taylor's Indus. Servs., LLC*, 2011 WL 1399081, *1, 9 (W.D. Pa. Apr. 12, 2011) (imposing $1,000 daily fine to ensure compliance with $350,000 judgment); *Carpenters Health & Welfare Fund of Phila. v. Special Servs. for Bus. & Educ., Inc.*, 2011 WL 2162902, *1, 3 (E.D. Pa. June 1,  2011) (imposing $1,000 daily fine to ensure compliance with default judgment against defendants for failing to make required "contributions" to employees' ERISA plans); *Schutter v. Herskowitz*, 2008 WL 4822012, *1, 9 (E.D. Pa. Nov. 6, 2008) (imposing $100 daily fine in "dispute over an escrow fund of $100,000").

This Court agrees that a fine that is "twenty times higher" than the fines imposed in those cases is appropriate considering that the amount in controversy in this case (over $533 million) is well over twenty times higher than the amounts at issue in those cases, and Appellant repeatedly refused to comply with a critical discovery order intended to reveal the location of the missing $533 million.  Moreover, although Appellants shrug (D.I. 35 at 16) at the "allegedly time-sensitive nature" of the requested discovery, they ignore the Bankruptcy Court's stated concerns about the location of the Alpha Funds.  (A8574).  As the Bankruptcy Court explained when it chose to

"expedite the discovery in this case," Appellants "apparently transferred $533 million to a hedge fund operating out of an IHOP in [Florida], and then that money all of a sudden disappears and nobody wants to tell me where it is."  (A8540-A8580 ("2/16/24 Tr.") at 35).  The Bankruptcy Court properly exercised its discretion in determining that a $20,000 daily fine was necessary to ensure compliance with its lawful order to disclose the location of the missing funds.

### B.    Appellants Have Waived Their Appeal of the PI Order

Mr. Ravindran separately appealed the Contempt Order and PI Order.  (*See* Civ. No. 24-389-MN, D.I. 1; Civ. No. 24-492-MN, D.I. 1).  Despite several extensions, Mr. Ravindran did not comply with the deadline to file his opening brief.  Accordingly, his appeals were dismissed on December 5, 2024.  (*See* D.I. 57).  Appellants indicated in their briefs that they are "no longer raising any separate issues relating to the March 14, 2024 [PI Order] and instead will join in any arguments made by Mr. Ravindran in his appeal with respect to the PI Order."  (D.I. 35 at 4-5).  According to Appellants, they have "not abandoned" their appeal of the PI Order; rather the "filing of an appeal would allow Camshaft to be the beneficiary of a reversal of the PI Order based on arguments made by Mr. Ravindran."  (D.I. 50 at 18).  As Mr. Ravindran failed to file an opening brief, and thus made no arguments with respect to the PI Order, Appellants have waived their appeal of the PI Order.

### C.    This Court Lacks Jurisdiction Over Any Challenge to the June 11 Order

Appellants challenge the Bankruptcy Court's refusal in the June 11 Order to remit the contempt fines after they began to comply with the discovery order.  The June 11 Order is not properly before this Court, however, because neither Camshaft nor Mr. Morton appealed that order.  Camshaft filed a notice of appeal of the Contempt Order and the Preliminary Injunction on March 20, 2024.  Camshaft filed an amended notice of appeal on March 28, 2024, that included Mr. Morton.  Neither party filed a notice of appeal following the Bankruptcy Court's June 11

Order, and the time to do so has long since passed.  *See* Fed. R. Bankr. P. 8002(a); Fed. R. App. P. 4(a)(1)(A).  This Court therefore lacks jurisdiction to review the June 11 Order.

Notwithstanding, Appellants argue that this Court may still consider their arguments as to the June 11 Order.  Appellants assert (D.I. 35 at 3) that this Court has jurisdiction over the June 11 Order because their March 19 notice of appeal "states that it is from 'any and all orders, judgments, decrees, decisions, rulings, and opinions that may subsequently be entered regarding the Contempt Order."  (D.I. 1).  This Court lacks jurisdiction over "premature" appeals, just as it lacks jurisdiction over appeals that are untimely.  *Marshall v. Comm'r Pa. Dep't of Corrs.*, 840 F.3d 92, 94 (3d Cir. 2016) (dismissing appeal from order concerning removal of counsel for lack of jurisdiction where court had not yet issued decision on motion at time appeal was noticed and no new or amended notice of appeal was filed); *see Carrascosa v. McGuire*, 520 F.3d 249, 253 (3d Cir. 2008) (court of appeals lacked jurisdiction to review any arguments concerning district court's denial of reconsideration because, if the appellant "wanted her appeal to encompass any challenge to [that] order," she was "required to file a new or amended notice of appeal within the . . . time limit imposed by the Federal Rules") (quotations omitted).

A notice of appeal is "premature" if, at the time it is filed, the court has "not yet issued or announced its decision" on the motion in question.  *Marshall,* 840 F.3d at 95.  A notice of appeal thus cannot preemptively cover "an appeal filed *before* the [court] announces the decision sought to be challenged.  *Id.* (emphasis added).  That is because appeals may be taken only "from actual . . . decisions."  *Id*. at 96.  No rule or doctrine "can cause a notice of appeal that is filed before a ruling has even been announced to encompass the later-announced ruling."  *Id*. at 95 (quotations omitted); *see DeJohn v. Temple Univ.*, 537 F.3d 301, 306, 307 n.3 (3d Cir. 2008) (Fed. R. App. P. 4(a)(2) does not permit challenge to final judgment on an appeal from a prior interlocutory order). The purpose behind this limitation is self-evident: extending jurisdiction to appeals based solely

on an appellant's "notice" that it intends to appeal yet-unannounced decisions of a court "would permit a litigant to file a preemptive notice of appeal before the [court] makes or announces any decision and then proceed with the appeal if the decision later proves unfavorable." *Marshall*, 840 F.3d at 97.

Appellants further contend that the June 11 Order is appealable because it is "inextricably linked to the Contempt Order" that is the subject of their appeal. (D.I. 35 at 3). Appellants cite no authority for such a rule. Although appellate review of an *injunction* generally "extends to all matters inextricably bound up with th[at] decision," Wright & Miller, 16 FED. PRAC. & PROC. JURIS. § 3921.1 (3d ed.), the same is not true of a *contempt* order, which is the only order the Appellants have chosen to address in this appeal.

## IV.   <u>CONCLUSION</u>

As Camshaft lacks an immediate right to appeal from the Contempt Order, and leave to appeal is unwarranted, Camshaft's appeal of the Contempt Order must be dismissed. Even assuming that Camshaft, like Mr. Morton, had an immediate right to appeal the Contempt Order, Appellants have together failed to demonstrate any abuse of discretion, so the Contempt Order will be affirmed. Appellants have further waived their appeal of the PI Order. Having ruled on the merits, the Motion to Dismiss the consolidated appeal for failure to obtain counsel is moot and will therefore be denied. An appropriate order follows.